Thomas DOBRUSKY and Peggy M. Dobrusky, Plaintiffs and Appellants,

v.

Victor K. ISBELL, Celia A. Isbell, Mervin R. Iverson, Sherrie Iverson, Dell Stewart Family Trust, Southern Utah Title Company, Iron County, Lockhart Finance Company, Roger C. Olson, Carlene Ann Olson, Ruth Walker, Rodney Adams, Thomas A. Dobrusky Pension Plan, and Eckhoff Watson & Preator Engineers, Defendants and Respondents.

No. 19381.

Supreme Court of Utah.

July 22, 1987.

Harold D. Mitchell, Don R. Strong, Springville, for plaintiffs and appellants.

Edward T. Wells, Salt Lake City, James L. Shumate, Patrick H. Fenton, Cedar City, Jan Stewart, Las Vegas, Nev., for defendants and respondents.

DURHAM, Justice:

Plaintiffs Thomas and Peggy Dobrusky appeal from a judgment determining that the boundary line between the real property owned by them and that owned by defendant Victor Isbell was the boundary line set forth in a deed conveyed in 1949 from William L. Adams (deceased), defendants' predecessor in interest, to J. Harold Mitchell, plaintiffs' predecessor in interest.

Plaintiffs and defendants are the owners of real property located in Iron County, Utah. Both parties claim ownership of a small strip of land located between a wire mesh fence that has separated their properties since 1948 and the surveyed property line set forth in the 1949 deed. Plaintiffs' and defendants' properties were originally part of a 120–acre tract of mountain grazing land held in tenancy in common by William L. Adams, J. Harold Mitchell, and the Lyman family, a party not involved in this action. The Lyman interest was partitioned out to the Lyman family prior to the events pertinent to this action, and the remainder of the property continued to be jointly owned by Adams and Mitchell.

In 1948 and 1949, Adams and Mitchell had discussions about dividing out Mitchell's interest. Prior to receiving the deed reflecting their agreement, Mitchell erected a wire mesh fence that divided the Mitchell-Adams property. While there is evidence that Mitchell intended the fence to serve as the boundary dividing Mitchell's and Adam's interests, it is clear that its primary purpose was to contain Mitchell's livestock.

In September 1949, Adams delivered a deed to Mitchell that divided Mitchell's interest out of the jointly held property. Mitchell's interest was described in the deed by metes and bounds. The deed made

no reference to the fence as a boundary line. During the trial, Mitchell testified that he was aware that the boundary line described in the deed fell short of his fence line, but he made no attempt to change the description before recording the deed.

In 1969, plaintiffs purchased their parcel from Mitchell and later built a summer home there. They installed a culinary water system that takes water from a spring located in the disputed area. Plaintiffs also have a large storage tank and various pipes located in the disputed area.

In 1978, after a series of conveyances, the Adams parcel was subdivided by land developers and became known as the Ireland Meadows Estates subdivision. A survey made by the Ireland Meadows developers in late 1977 revealed that the fence line between the properties was not in the same location as the surveyed line in the metes and bounds description of the properties. Plaintiffs first became aware of the discrepancy in June or July of 1978 when the subdivision map was submitted to the county planning commission for approval.

Plaintiffs commenced this action, claiming that under the doctrine of boundary by acquiescence the boundary line is located along the fence line, and thereby sought an order to quiet title in the disputed property. In an attempt to show that Adams and Mitchell acquiesced to the fence as a boundary line, plaintiffs proffered testimony by Mitchell that he and Adams agreed to the location of the boundary separating their properties. This testimony was excluded by the trial court on the ground that Adams was dead; therefore, Mitchell's testimony was barred by the Utah Deadman's Statute. Utah Code Ann. § 78–24–2(3) (1977).[1]

After all the evidence was presented, the trial court determined that the evidence did not establish a boundary by acquiescence, but that the true boundary was established by the description in the deed conveyed from Adams to Mitchell. Plaintiffs appeal from that judgment, seeking a reversal or a new trial on the ground that the Utah Deadman's Statute does not bar Mitchell's testimony and it was error for the trial court to have excluded it from evidence.

■ We need not determine whether the testimony was properly excludable under the Deadman's Statute. The doctrine of merger provides that on delivery and acceptance of a deed, the provisions of the underlying contract for the conveyance are merged into the deed and thereby become extinguished and unenforceable. *Secor v. Knight,* 716 P.2d 790, 792 (Utah 1986); *Stubbs v. Hemmert,* 567 P.2d 168, 169 (Utah 1977). We regard a deed as the "final repository of the agreement which led to its execution." 716 P.2d at 792 (quoting Annot., 84 A.L.R. 1008, 1009 (1933)). Plaintiffs' argument that the deed did not reflect Adam's and Mitchell's intended agreement (that Mitchell's fence would serve as a boundary) does not overcome the doctrine of merger. When the terms of the deed cover the same subject matter as the antecedent agreement, the deed controls.

If the alleged agreement did exist, Mitchell and Adams would have been cognizant of the terms of that agreement. The fact

---

1. The Utah Deadman's Statute has been repealed since the trial. At the time of the trial, it read as follows:

> (3) A party to any civil action, suit or proceeding, and any person directly interested in the event thereof, and any person from, through or under whom such party or interested person derived his interest or title or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues or defends, as guardian of an insane or incompetent person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian, assignee or grantee, directly or remotely, of

> such heir, legatee or devisee, as to any statement by, or transaction with, such deceased, insane or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent or deceased person, unless such witness is called to testify thereto by such adverse party so claiming or opposing, suing or defending, in such action, suit or proceeding.

Section 78–24–2 now reads: "Every person is competent to be a witness except as otherwise provided in the Utah Rules of Evidence." *See also* Utah R.Evid. 601.

the terms in the deed are otherwise inconsistent makes it

difficult to perceive but that the changes were made with deliberate intent. The cases so hold, and it may be said that in such a situation it would appear to be almost a conclusive presumption that the different terms of the deed were intended by the parties to supersede or merge those of the contract in this respect.

Annot., 38 A.L.R.2d 1310, 1313 (1954).

Execution and delivery of the deed by Adams constituted full performance on his part, and Mitchell's acceptance of the deed manifested his acceptance of that performance even though the estate conveyed differed from that allegedly promised in an antecedent agreement. Therefore, the deed is the final agreement, and all prior terms, whether written or oral, are extinguished and unenforceable. *Stubbs v. Hemmert*, 567 P.2d at 169; *see generally* Annot., 84 A.L.R. 1008 (1933).

The judgment is affirmed.

HALL, C.J., STEWART, Associate C.J., and ZIMMERMAN, J., concur.

HOWE, Justice (concurring).

I concur but write to point out that the plaintiffs contend that an express parol agreement fixing the wire fence as the boundary line was made by J. Harold Mitchell and William L. Adams, predecessors in title to the parties to this action, *both* at the time the fence was constructed in 1948 and again at the time the deed was delivered in 1949. The majority opinion properly holds that any agreement made in 1948 merged into the deed delivered one year later. In such a case, a deed may be reformed, if certain requirements are met, to conform to the parties' intentions.

If an express parol agreement was made at the time of delivery of the deed, such an agreement would not be enforceable because the parties knew or reasonably should have known that the fence could not be on the true line since it did not run the full distance in a straight north-south line as called for in the deed. At the south end, it veered from tree to tree, to which the

fence wires were nailed. We have held that adjoining property owners cannot orally agree upon a boundary line between them which they know is not or which obviously could not be on the true line. *Tripp v. Bagley*, 74 Utah 57, 276 P. 912 (1928).

For the same reason, a boundary line by acquiescence cannot be found here. The parties knew, or it was obvious, that a fence line with angles in it was not on the true north-south line. *Tripp v. Bagley, supra.* Additionally, the trial court found that William L. Adams and his grantees had not acquiesced in the fence line as the boundary between the properties, but had regarded the fence line simply as a livestock control.