**SOUTHLAND CORPORATION, a Texas corporation, Plaintiff, Appellant and Cross–Respondent,**

v.

**Gail C. POTTER and Lori Potter, Defendants, Respondents and Cross–Appellants.**

No. 880089–CA.

Court of Appeals of Utah.

Aug. 25, 1988.

Ralph L. Jerman (argued), B.L. Dart, Salt Lake City, for plaintiff, appellant and cross-respondent.

Robert Felton (argued), Salt Lake City, for defendants, respondents and cross-appellants.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Southland Corporation ("Southland") appeals rejection of its claim of an easement across Potters' land for customer access to a convenience store. Potters cross-appeal dismissal of their claim for trespass damages. We affirm.

The issues before us are: (1) Did Southland's written agreements with Big Six, the predecessor in title of both parties, create an express easement across Potters' land? If not, did the severance of the properties create an implied easement in favor of Southland? (2) If Southland has no easement, are Potters entitled to damages for trespass?

Southland and Big Six executed a Contract of Sale on July 3, 1975 for the purchase by Southland of a parcel of land on 6200 South in the City of West Jordan. Southland wanted the property for a new 7–Eleven store. The contract was amended in writing on March 9, 1976 to change the size of the parcel. The contract is silent concerning an easement or restrictive covenant on adjoining land retained by Big Six, except for a restriction on the size of competing grocery stores. On April 11, 1976, representatives of Big Six and Southland signed a letter typed on City of West Jordan letterhead that refers to the "7–11 on 6200 South and Dixie Drive" and contains some language about access and right-of-way. A warranty deed was subsequently executed by Big Six, delivered to Southland, and recorded on June 14, 1976. The deed describes a parcel of unimproved land (102' × 160') and does not contain any mention of a restrictive covenant or an easement for the benefit of Southland over the property retained by Big Six on the west, east and south of Southland's parcel.

In 1984, Big Six sold and conveyed the retained acreage to Potters. Both properties are bounded on the north by 6200 South Street. Prior to Potters' purchase, Southland had constructed and was operating a 7–Eleven convenience store on its parcel. Customers were using some of the present Potter property for access.

## EXPRESS EASEMENT

■ The trial court found that the writings relied on by Southland "[do] not amount to the agreement needed to give to [Southland] the property interest claimed," i.e., an express easement. We agree. Southland claims this finding is not supported by the evidence. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Utah R.Civ.P. 52(a). Under this standard, we do not set aside the trial court's factual findings unless they are against the great weight of the evidence or we otherwise reach a firm and definite conviction that a mistake has been made. *Western Kane County Spec. Serv. Distr. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987).

Southland's initial contract had a plot plan with the words "open" and "access" written thereon. The amended plot plan contained the words "open" and "parking" in the area adjoining the parcel purchased. The April 11, 1976 letter is the only other written source of "access" or "right-of-way" language:

If the 7–11 store is faced West, we will allow an access right-of-way in from 6200 South. We will also want two right-of-ways in from Dixie Drive.

All property in front of the 7–11 store must be blacktopped. All property must be landscaped.

The right-of-way on 6200 South will remain there until the West Valley Expressway is completed past the store. If the traffic is too heavy, the city will request the access on 6200 South be closed and the curb and gutter replaced or put in by 7–11 at their expense.

This writing was signed by Bob Bowles for Big Six and E.L. Pack for Southland. At trial, Bowles testified that it was never the seller's intent to grant Southland access across the retained property. Pack was asked whether Southland had paid anything for any interest in the adjoining property. He said, "At no time was that ever offered to us for sale or purchase." The documents and the testimony demonstrate lack of mutual assent for the express easement Southland claims. The minds of the parties did not meet on this property interest. Thus, as the lower court found, there was no agreement. The drafter of the letter was not identified, nor was the entity or entities intended by the personal pronoun "we," as in "We [unknown whether singular or plural] *will allow* an access right-of-way" and "We *will also want* two right-of-ways." (Emphasis added). The tenor of the language is prospective, indicating the possibility of an agreement in the future. No purchase price is mentioned for the undefined rights. The language is vague, inconsistent, ambiguous, and incomplete. Southland's brief variously describes the claimed property interest as: (a) Big Six would furnish access consisting of *two* rights-of-way across Potters' property for ingress and egress to the 7–Eleven store; (b) there would be either open *access* or open *parking;* (c) the property was to remain open for common use of *all* occupants of the shopping center, including ingress and egress to the 7–Eleven store; and (d) Southland acquired "some rights" over the property which cannot be completely cut off or taken away by Potters. Southland's range of meanings demonstrates that the writing lacks essential terms and provisions, i.e., the language could mean anything. If Southland cannot articulate and define with specificity the property interest claimed, the court cannot.

■ Southland asked the trial court to exercise equitable power and impose specific performance of an alleged agreement by way of injunction. But specific performance cannot be required unless all terms of the agreement are clear. The court cannot compel performance of a contract which the parties did not mutually agree upon. *Pitcher v. Lauritzen,* 18 Utah 2d 368, 423 P.2d 491, 493 (1967). A binding contract can exist only where there has been mutual assent by the parties manifesting their intention to be bound by its terms. Furthermore, a contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can be performed. *Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597, 600 (1962). "Under the circumstances shown to exist here, where there was simply some nebulous notion in the air that a contract might be entered into in the future, the court cannot fabricate the kind of a contract the parties ought to have made and enforce it." *Valcarce v. Bitters,* 12 Utah 2d 61, 362 P.2d 427, 428–29 (1961).

■ When the parties leave material matters so obscure and undefined that the court cannot say whether the minds of the parties met upon all the essentials or upon what substantial terms they agreed, the case is not one for specific performance. *D.H. Overmyer Co. v. Brown,* 439 F.2d 926, 929 (10th Cir.1971) (quoting with approval 49 Am.Jur. *Specific Performance* § 22). Based on our review of the evidence, we cannot say the court's finding that there was no agreement is clearly erroneous.[1]

## EASEMENT BY IMPLICATION

Southland next asserts that "the severance of property under the common ownership of the parties' predecessor in title [Big Six] created an easement by implication for ingress and egress over the property in question." The trial court concluded that "[Southland's] claim of an easement across the property owned by [Potters] is without basis in that [Southland] acquired no prop-

**1.** We note that Potters did not raise the doctrine of merger. That doctrine provides that, on delivery and acceptance of a deed, the provisions of the underlying contract for the conveyance are merged into the deed and thereby become extinguished and unenforceable. A deed is the final repository of the agreement which led to its execution. *Dobrusky v. Isbell,* 740 P.2d 1325, 1326 (Utah 1987).

erty rights to cross this property." On appeal, we review this conclusion of law for correctness. *See Jackson Cattle Co.*, 744 P.2d at 1378.

Southland mistakenly relies on *Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264 (1947). We think *Adamson* is controlling, but not in Southland's favor. *Adamson* identifies four elements required to create an easement by severance:

(1) Unity of title followed by severance; (2) That at the time of severance the servitude was apparent, obvious, and visible; (3) That the easement is reasonably necessary to the enjoyment of the dominant estate; and (4) It must usually be continuous and self-acting, as distinguished from one used only from time to time when occasion arises.

*Id.*, 112 Utah at 67–68, 185 P.2d at 272 (quoting *Morris v. Blunt*, 49 Utah 243, 161 P. 1127, 1132 (1916)).

■ The severance of Big Six's ownership occurred on June 14, 1976 when Southland received its deed. Because the evidence is undisputed that no access easement across the respective properties existed at that time, element (2) above is completely absent in this case. In 1976 Big Six owned a vacant, unimproved six-acre parcel of land along 6200 South Street. At that time and prior thereto, there was no need for an easement or right-of-way across one part of the land to access another area. At that time, separate tenements simply did not exist there. When Southland's deed severed the six-acre parcel no easement or servitude existed thereon. Whatever use was made of one parcel for the benefit or detriment of the other came after the severance. Since the second requisite element was unsatisfied at the time of the severance, no easement by implication can exist in this case. Therefore, we need not examine the remaining necessary elements. The trial court correctly concluded that there was no implied easement.

## TRESPASS DAMAGES

■ Potters counterclaimed for trespass damages, claiming daily use of their property by Southland's employees, invitees, and licensees. Potters requested damages from Southland in the amount of $1.00 for each automobile that had used, passed over, or parked on their property. At trial, Mr. Potter was the only witness to testify in support of the trespass claim. He testified concerning the dimensions of the portion of his property that Southland was allegedly using. He also asserted that this portion was important to his plans for the entire property. His attorney then asked, "Do you have the value as to the rental value?" Answer: "Your Honor, the high value of that property would be $4000 a month. The low figure would be around 20 to 2500." No other evidence of trespass damages was offered. The trial court concluded that Potters' claim was not supported by the evidence. We agree.

The evidence does not connect Southland to any unauthorized use of the property after Potters purchased it. Mr. Potter described two uses which he observed. First, "there have consistently been parked the time I have seen it numerous cars parked on the strip with for sale signs on them...." No one identified whether Southland parked the cars or authorized the parking. Second, Mr. Potter stated, "There's [sic] been some chalk—some lines painted for parking." Again, there was no evidence of who painted the lines or whether the lines were painted before or after Potters acquired the property.

We find no error in the trial court's dismissal of Potters' trespass claim.

AFFIRMED.

BENCH and BILLINGS, JJ., concur.