1999 UT App 095

**Dean R. POTTER and Diane B. Potter dba Dean's SuperLube, Plaintiffs and Appellees,**

v.

**Reta CHADAZ, Gary Bywater, Karleen C. Bywater, First American Title Ins. Co., and John Does 1–10, Defendants and Appellant.**

**No. 971756–CA.**

Court of Appeals of Utah.

March 25, 1999.

---

Reed Hadfield and Stephen R. Hadfield, Mann, Hadfield & Thorne, Brigham City, for Appellant.

Marlin J. Grant, Olson & Hoggan, Logan, for Appellees.

Before WILKINS, P. J., and GREENWOOD, Associate P. J., and BILLINGS, J.

## OPINION

WILKINS, Presiding Judge:

¶1 Appellant, Reta Chadaz (Chadaz) appeals the trial court's grant of summary

judgment in favor of Dean and Diane Potter (the Potters), quieting title to a sixty-six-foot parcel of property in Tremonton, Utah. We affirm.

## BACKGROUND

¶ 2 On May 12, 1980, Chadaz entered into a contract of sale with Heritage Park Partners (Heritage Partners) to sell Heritage Partners approximately 47.12 acres owned by Chadaz in Tremonton, Utah. This contract provided for the sale of the entire parcel without mentioning the reservation of the contested easement. In conjunction with this contract, Chadaz executed and recorded a Warranty Deed, placing the property in trust with Hillam Abstracting and Insurance Agency (Hillam). Also on that day, Hillam executed and recorded a Warranty Deed conveying to Heritage Partners approximately 1.58 acres of the property, encompassing the area of the alleged easement. However, neither warranty deed reserved any easement for Chadaz.

¶ 3 Heritage Partners subsequently incorporated as Heritage Park Plaza, Inc. (Heritage, Inc.). As a result, on October 24, 1980, Heritage Partners executed a Warranty Deed transferring the entire 1.58 acres, without reservation of an easement, from Heritage Partners to Heritage, Inc. That same day, Heritage, Inc. executed a Special Warranty Deed conveying the 1.58 acres to a third party, Villatek, Inc. (Villatek). The Special Warranty Deed included language purporting to reserve a sixty-six-foot right-of-way for a roadway to be built, which Chadaz claims was for her benefit. Both warranty deeds were recorded on December 9, 1980.

¶ 4 In November 1980, Heritage, Inc. defaulted on the original agreement with Chadaz. As a result, Chadaz and Heritage, Inc. entered into a Supplemental Agreement, dated November 25, 1980, which adjusted the payment schedule on the property but otherwise incorporated all of the terms of the original agreement. This agreement provided that when Heritage, Inc. transferred the property to a third party (which it had already done by conveying the property to Villatek), Heritage Partners agreed to reserve a sixty-six-foot right-of-way for Chadaz fronting Main Street and running to her property.

¶ 5 Villatek later defaulted, and the property was subsequently transferred on five separate occasions, the last of which resulted in conveyance of part of the property, not adjoining the Chadaz's land, to the Potters. After specifically inquiring of Chadaz, and without her objection, the Potters began building on the sixty-six-foot strip, which until that time, had never been used by any party, including Chadaz. In 1996, several years after the Potters had completed improvements on the land, Chadaz, who had at least one, if not several, access routes to her property, asserted a right to the disputed parcel, and obtained a quit claim deed from Heritage, Inc. which had ceased to legally exist in 1983. After Chadaz claimed an easement on the sixty-six-foot parcel, the Potters filed an action to quiet title to the land, moving for summary judgment. After a hearing, the trial court granted the Potter's motion for summary judgment. The trial court ruled that no easement existed because Chadaz lost all rights to the property when she conveyed it to Heritage Partners, and Heritage, Inc. "could not reserve to Chadaz something it did not own." Chadaz appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Chadaz argues summary judgment was improper because there were several disputed issues of material fact. However, Chadaz has mistakenly characterized the legal issues before the trial court as issues of fact. Therefore, because the relevant facts are not in dispute, we address whether the Potters were entitled to judgment as a matter of law on the issue of the existence of the easement.

¶ 7 We review the trial court's grant of summary judgment for correctness, according no deference to the trial court's conclusions of law. *See Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah 1997). In addition, "we view the facts and inferences in the light most favorable to the non-moving party," and affirm only when "there is no genuine issue as to any material fact and ... the

moving party is entitled to a judgment as a matter of law." *Id.* (internal citations omitted); *accord* Utah R. Civ. P. 56(c). Furthermore, the question of whether or not an easement exists is a conclusion of law. *See generally Orton v. Carter,* 970 P.2d 1254 (Utah 1998).

## ANALYSIS

¶ 8 The facts of this case are complex and there are several relevant transfers and conveyances of the disputed property. However, the outcome of this appeal hinges upon whether an easement in fact was created at any time. In Utah, an easement may be expressly created by agreement between two parties through either an express grant or an express reservation. In addition to express easements, Utah recognizes that actions of the parties may give rise to easements by implication and prescription. Finally, Utah law acknowledges that an easement by necessity may be implied due to the nature of the land itself. We first address whether any of the relevant land transactions contained an express agreement suitable to create an express easement in favor of Chadaz. Alternatively, we address whether the parties' actions were sufficient to create an easement by implication or prescription. Finally, we examine whether the character of the land creates an easement by necessity.

### 1. Express Easement

¶ 9 The most common type of easement is one that is expressly created between two parties in a land transaction or conveyance by an express grant or an express reservation. Although there are no specific requirements for the creation of an express easement, Utah courts generally look to the

> intent of the parties to an agreement purportedly transferring real property [to determine] ... whether the document sufficiently describes the interest granted "in a manner sufficient to construe the instruments as a conveyance of an interest in land." Words that "clearly show intention to grant an easement are sufficient, provided the language is certain and definite in its term." According to the Restatement

of Property, [s]ome degree of definiteness in the scope or extent of an interest is essential to its recognition as a property interest.... When an interest is definite and precise in its extent it is more readily recognized as an entity which can be the subject matter of a conveyance than when it is indefinite. In order that privileges of use may be recognized as easements there must be some degree of definiteness in the privileged use.

*Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n,* 899 P.2d 779, 781–82 (Utah Ct. App.1995) (footnote omitted). In addition to the intention of the parties and the definiteness of the conveyance, "[a]n express easement ... requires 'mutual assent by the parties manifesting their intention to be bound by its terms.'" *Green v. Stansfield,* 886 P.2d 117, 122 (Utah Ct.App.1994) (quoting *Southland Corp. v. Potter,* 760 P.2d 320, 322 (Utah Ct.App.1988)). Finally, the conveyance of an express easement requires consideration. *See id.*

¶ 10 In this case, the first transaction expressly reserving a right-of-way in the disputed land was the October 24, 1990, Warranty Deed executed by Heritage, Inc., conveying 1.58 acres from Heritage, Inc. to Villatek. This document purported to reserve a right-of-way for Chadaz by stating the conveyance of the land was "Subject To A Right–Of–Way Over The East 66 Feet Of Said Property, For The Purpose Of A Proposed Road."

¶ 11 This conveyance from Heritage, Inc. to Villatek fails to meet the requirements of an express easement. Although it appears the parties intended to create an express easement, the language in the deed is not sufficiently detailed. In fact, it does not specify the boundaries of the easement or its exact location. This vague language does not constitute a definite and ascertainable description of the property. *See, e.g., Southland Corp.,* 760 P.2d at 322 (concluding written agreement did not amount to express easement where its language was "vague, inconsistent, [and] ambiguous").

¶ 12 However, even if we were to assume that this language were sufficient to

create an express easement, Utah law prohibits parties from expressly creating an easement in a land transaction for the benefit of a third party who is not involved in the transaction—i.e., a "stranger to the deed." *See Johnson v. Peck,* 90 Utah 544, 63 P.2d 251, 254 (Utah 1936). In *Johnson,* the Utah Supreme Court expressly held that two parties to a land transaction could not agree to reserve a right-of-way to a third party who "had no right or interest in the land ..., having conveyed it away some two years before." *Id.* Similarly, in this case, Heritage, Inc. attempted to reserve a right-of-way for Chadaz, who had, approximately five months before, conveyed her entire interest in the 1.58 acres, encompassing the area of the alleged right-of-way, to Heritage Partners by contract. Accordingly, Chadaz, a "stranger to the deed," cannot claim any benefit to the right-of-way because she had no interest in the land at the time Heritage, Inc. conveyed the 1.58 acres to Villatek. Thus, we conclude *Johnson* is controlling in this case and reaffirm the holding that parties may not reserve an easement in favor of a third party who has no interest in the property.

■ ¶ 13   We acknowledge the parties' intent is important in determining whether a right-of-way has been created; and this holding, may, in some instances, work to frustrate the purpose of parties in attempting to reserve an easement. However, Chadaz could have readily avoided the "stranger to the deed" problem by simply reserving an interest in her original conveyance of the land, or by Heritage, Inc. directly conveying an interest to her, rather than attempting to "reserve" the easement to her. The law of real property in Utah after *Johnson* is that a grantor may "reserve" an interest to itself, but not to a third party. Sound public policy supports this distinction. There is an important interest for property owners to possess unencumbered titles. As one court noted:

> The overriding considerations of the "public policy favoring certainty in title to real property, both to protect bona fide purchasers and to avoid conflicts of ownership, which may engender needless litigation," persuade us to [apply the 'stranger to the deed'] ... rule. We have previously noted

that in this area of law, "where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a 'correct' rule of law."

*In re Estate of Thomson v. Wade,* 69 N.Y.2d 570, 516 N.Y.S.2d 614, 509 N.E.2d 309, 310 (1987) (citation omitted). We also note this decision comports with other jurisdictions that have adopted the "stranger to the deed" doctrine. *See, e.g., Nelson v. Parker,* 687 N.E.2d 187, 188 (Ind.1997) (holding reservation of interest in property for benefit of third party invalid because third party is "stranger to the deed"); *Burnell v. Roush,* 404 P.2d 836, 840 (Wyo.1965) (same).

■ ¶ 14   Chadaz also argues the Supplemental Agreement between Chadaz and Heritage, Inc., created an express easement in favor of Chadaz. That Agreement provided "when the property fronting on Main Street, *which has been released by the seller to the buyer,* has been sold by the buyer *to a third party* that there will be a *reservation* of a 66 foot wide roadway from Main Street to the seller's remaining property." (Emphasis added.) This language also fails to create an express easement.

¶ 15   First, the language in the Supplemental Agreement is ambiguous. Although it seems to reserve a right-of-way, it also states that Chadaz has "released" this property to Heritage, Inc. Therefore, it is unclear whether Chadaz was giving up any right to the parcel or attempting to reserve a right-of-way. Second, the language of the Supplemental Agreement is vague and simply refers to the possibility of a future agreement with an unknown third party. *See Southland Corp.,* 760 P.2d at 322 (stating prospective language in agreement was insufficient to create easement). Also, the agreement fails to specify the location of the right-of-way or identify its precise dimensions. Furthermore, it is clear that Chadaz and Heritage, Inc., did not intend to create an easement between themselves by executing this agreement. Instead, the parties attempted to require Heritage, Inc. and an unknown third party to reserve an easement in favor of Chadaz, a "stranger to the deed." Because

the Supplemental Agreement is insufficiently detailed and attempts to reserve a right-of-way for a third party, we conclude it failed to create an express easement in favor of Chadaz. Although we have determined that an express easement was not created in this case, this conclusion is not dispositive. We must still consider whether Chadaz is entitled to an easement by implication, necessity, or prescription.

### 2. Easement by Implication

¶ 16 There are four elements necessary to constitute an easement by implication: (1) unity of title followed by severance; (2) at the time of severance the servitude was apparent, obvious, and visible; (3) the easement is reasonably necessary to enjoy the dominant estate; and (4) use of the easement was continuous rather than sporadic. *See Butler v. Lee,* 774 P.2d 1150, 1152 (Utah Ct.App.1989). Here, it is undisputed that Chadaz has never used the claimed right-of-way. Because the fourth requisite element has not been satisfied, an easement by implication cannot exist in this case. Therefore, we need not address the remaining elements.

### 3. Prescriptive Easement

¶ 17 In order to establish a prescriptive easement in Utah, Chadaz must show a use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least twenty years. *See Marchant v. Park City,* 788 P.2d 520, 524 (Utah 1990). As previously stated, it is undisputed that Chadaz has never used the claimed right-of-way for any purpose. Therefore, Chadaz cannot establish the requisite elements of a prescriptive easement.

### 4. Easement by Necessity

¶ 18 An easement by necessity arises "when there is a conveyance of part of a tract of land which is so situated that either the part conveyed or the part retained is surrounded with no access to a road to the outer world." *Tschaggeny v. Union Pac. Land Resources Corp.,* 555 P.2d 277, 280 (Utah 1976). In this case, the undisputed evidence shows that Chadaz's property is not landlocked and that she has at least one, if not several, access routes to her property that were used in lieu of any claimed right-of-way across the Potter's land. Therefore, Chadaz cannot establish an easement by necessity over the claimed right-of-way.

### CONCLUSION

¶ 19 Neither the conveyance from Heritage, Inc. to Villatek, nor the Supplemental Agreement between Chadaz and Heritage, Inc. are sufficiently detailed to create an enforceable easement. Additionally, both documents violate the "stranger to the deed" doctrine by attempting to create an easement in favor of Chadaz, a third party to the transaction. We therefore conclude that no express easement in favor of Chadaz exists. Furthermore, because Chadaz has not actually used the claimed easement at issue, she has no claim to an easement by implication or prescription. Finally, Chadaz's property is not landlocked and consequently she cannot establish an easement by necessity. Because our conclusion that no easement was created in Chadaz's favor is dispositive of this case, we need not consider the other issues raised on appeal.[1] On the basis of the foregoing, we conclude that the trial court did not err in granting Potters' motion for summary judgment.

¶ 20 Affirmed.

¶ 21 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, JUDITH M. BILLINGS, Judge.

---

1. We note, however, that this decision does not foreclose Chadaz from seeking redress for any parties' failure to perform contractual obligations.