2013 UT App 265

## THE UTAH COURT OF APPEALS

DAVID S. VAN DENBURGH,
Plaintiff and Appellant,

*v.*

SWEENEY LAND COMPANY AND PARK CITY II, LLC,
Defendants, Third-party Plaintiffs, and Appellees,

Memorandum Decision
No. 20120030-CA
Filed November 7, 2013

Third District Court, Silver Summit Department
The Honorable Keith A. Kelly
No. 100500569

Jason D. Boren, Melanie J. Vartabedian, and
Tesia N. Stanley, Attorneys for Appellant
Paul D. Veasy and David K. Heinhold, Attorneys
for Appellee Sweeney Land Company
J. Craig Smith and Matthew E. Jensen, Attorneys
for Appellee Park City II, LLC

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES CAROLYN B. MCHUGH and STEPHEN L. ROTH
concurred.

DAVIS, Judge:

¶1     David S. Van Denburgh, individually and in his capacity as
the trustee of the David S. Van Denburgh Revocable Living Trust,
appeal the trial court's summary judgment ruling rejecting his claim
to a prescriptive easement over a strip of land located on property
jointly owned by Sweeney Land Company and Park City II, LLC
(collectively, Sweeney). We affirm.

¶2    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We review a trial court's grant of summary judgment for correctness, affording no deference to the trial court's legal conclusions. *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 5, 297 P.3d 578.

¶3    "[T]he question of whether or not an easement exists is a conclusion of law." *Potter v. Chadaz*, 1999 UT App 95, ¶ 7, 977 P.2d 533. To establish a prescriptive easement, a party must show, "by clear and convincing evidence," *Buckley v. Cox*, 247 P.2d 277, 279 (Utah 1952), that its use of the area in question has been "(1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years," *Marchant v. Park City*, 788 P.2d 520, 524 (Utah 1990). "[O]nce a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse." *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998). The burden then shifts to the landowner opposing the easement to "establish[] that the use was initially permissive." *Id.* at 311–12; *cf. Buckley*, 247 P.2d at 279; *Harkness v. Woodmansee*, 26 P. 291, 293 (Utah 1891) ("Where a person opens a way for the use of his own premises, and another person uses it also without causing damage, the presumption is, in the absence of evidence to the contrary, th[at] such use by the latter was permissive, and not under a claim of right."). Additionally, "[t]he use by individual persons in common with the public generally is regarded as permissive, and by such common use no individual person can acquire a right by prescription as against the owner of the fee." *Thurman v. Byram*, 626 P.2d 447, 450 (Utah 1981) (citation and internal quotation marks omitted); *accord Kohler v. Martin*, 916 P.2d 910, 914 (Utah Ct. App. 1996).

¶4    Sweeney owns approximately sixty-four acres of "open, unenclosed, undeveloped mountain terrain" (the Sweeney Property). Sweeney has permitted the public to access its property

"for recreational use . . . since 1979" and has constructed "switchback trails" on the property to facilitate the public's recreational access. Sweeney granted the Greater Park City Company an express, non-exclusive easement over a specified portion of its sixty-four acre parcel that allows Greater Park City Company to maintain and operate the Creole Ski Run at Park City Mountain Resort (the Ski Lift Easement). The Ski Lift Easement bisects the Sweeney Property. Van Denburgh's vacation home abuts the Sweeney Property near the Creole Ski Run. His prescriptive easement claim is "over a small portion of the Sweeney Property extending from the Van Denburgh Property to the Creole Ski Run" (the Path).

¶5      Here, the trial court assumed, without deciding, that Van Denburgh's use of the Path "was open and notorious for a continuous period of twenty years, and therefore, presumptively adverse" but determined that Sweeney defeated the presumption of adverse use with evidence that Van Denburgh's use was permissive.[1] Sweeney contended that it has permitted the public to use the entirety of its property since 1979 and, at the very latest,

---

1. Van Denburgh also argues that the trial court was required to address the elements of a prescriptive easement claim in a particular order—first determining whether the use was open and notorious for a continuous period of twenty years before analyzing the adverse versus permissive element. We disagree that the elements of a prescriptive easement claim need to be addressed in a particular order. Each element of a prescriptive easement claim is *required*; failure to satisfy any one of the four elements is fatal to a prescriptive easement claim. *See Morris v. Blunt*, 161 P. 1127, 1131 (Utah 1916) (explaining that under Utah law, "[t]he right by prescription can *only* arise by adverse use and enjoyment under claim of right uninterrupted *and* continuous for a period of 20 years" (emphasis added)); *see also* 68 Am. Jur. *Proof of Facts* 3d 239, § 13 (2002) ("In the absence of any of these elements, the claimant cannot acquire an easement by prescription over the lands of another." (footnote omitted)).

since 1990 or 1991, when it constructed four miles of switchback trails on the property and placed signs along various access points of the property to inform the public that they were permitted to use its land for recreational purposes (the Public License).[2] Additionally, Sweeney submitted deposition evidence from Dr. Patrick Sweeney of Sweeney Land Company, characterizing the Public License as "a goodwill public accommodation" that has been described as permissive "in countless meetings, countless interviews on the radio, countless TV interviews, [and] countless newspaper articles." Dr. Sweeney testified that the company's "philosophy" since at least 1979 has been to be "very neighborly and let people use [the] property generously to have fun," which in practice has meant allowing the public to access "every square foot of [the] property" and even to bushwhack paths on the property, "as long as [the paths] don't become a big erosion problem" and people do not cut down trees or install permanent fixtures along the paths like sprinklers, signs, or lights. Sweeney also offered affidavit testimony from two landowners whose properties are located near the Van Denburgh property and are similarly adjacent to the Sweeney Property. Like Van Denburgh, these landowners "accessed the Sweeney Property directly from [their] backyard[s]" in order to use the property—including the Creole Ski Run—for hiking, skiing, biking, and other recreational purposes. These owners indicated that they have "always" considered their "use of the Sweeney Property [to be] with the permission of Sweeney Land as a neighborly accommodation" based on the unenclosed nature of the property, the fact that Sweeney had never attempted to prevent them from using the property, and their observations of the general public's "extensive use" of the property over the years. Both landowners indicated that Dr. Sweeney personally confirmed that their access of the Sweeney Property from their backyards for recreational purposes was permitted.

¶6    Van Denburgh argues that summary judgment was inappropriate because he adequately disputed Sweeney's evidence

---

2. The Path is not on or contiguous to the switchback trails.

of permissiveness. Van Denburgh relies on an overlay map and county records to support his claim that Sweeney granted various "easements to the Greater Park City Company for use by the general public" that encompass "a majority of the Sweeney Property" but not the portion of the property containing the Path, which Van Denburgh calls the "Creole Development Site." Essentially, Van Denburgh draws the lines around the areas that Sweeney, the trial court, and this decision refer to as the Public License area and the Ski Lift Easement area differently and in a manner that subdivides the Sweeney Property into additional segments. Though Van Denburgh did not present any evidence that Sweeney actually prevented the public from accessing the Path or the Creole Ski Run (via the "Creole Development Site"), he contends that the presence of a "CLOSED" sign and rope fencing along part of the Creole Development Site, the reference in the switchback signs informing people of the Public License to the trail system, and the absence of any of those signs in the Creole Development Site reasonably imply such a restriction. Van Denburgh also relies on a letter Sweeney Land Company sent him in 2009, which he contends proves, in Sweeney Land's "own words," that the Path is not a part of the "public easement" that Van Denburgh considers the Ski Lift Easement to grant. Accordingly, Van Denburgh argues that the letter demonstrates that his use of the Path was never permissive. Additionally, Van Denburgh contends that the permissive nature of his use was also disputed by evidence demonstrating that his use of the Path was different from the public's use and that he and his predecessors in interest used the Path under a claim of right. *See Harkness,* 26 P. at 293.

¶7    The trial court rejected Van Denburgh's categorization of the Ski Lift Easement as a public easement and held that the easement does not otherwise "contradict or dispute" Sweeney's evidence that Van Denburgh's use was permissive. The court ultimately determined that "[t]he Ski Lift Easement is . . . not related" to Van Denburgh's claim. We agree. The Ski Lift Easement involves Sweeney Land Company and several other grantors each agreeing

to grant Greater Park City Company a non-exclusive easement to "construct, maintain, operate, use, repair, replace, and relocate" certain identified ski lift facilities and ski runs and the equipment, signs, fencing, etc. associated therewith. Likewise, the "CLOSED" sign and rope fencing Van Denburgh referenced were placed along the boundaries of the Creole Ski Run, not the Path specifically. And the sign and fencing do not indicate that the area was excluded from the Public License. Rather, the sign and fencing along the ski run direct skiers down the mountain in a manner that prevents them from getting lost or hitting a dead-end.

¶8 Next, the letter Van Denburgh relies on was sent to him by an attorney on behalf of Sweeney after "a representative of Sweeney Land Company noticed that an individual apparently employed by [Van Denburgh] was cutting a path leading from [Van Denburgh's] property into and trespassing on Sweeney . . . Property." The Sweeney representative also noticed a sprinkler system and gate, the latter of which consisted of two wooden posts with a chain strung between the two and a "No Trespassing" sign hanging from the chain, both erected by Van Denburgh on Sweeney land. The letter states,

> To be clear, you have no legal right to trespass on Sweeney Land Company property or place your "gate" or sprinkling system on such property. This includes the fact that *you have no legal right to access the ski trail easement* running over the Sweeney Land Company property, since the only way you can get to the ski trail is to cross the Sweeney Land Company property *which is not subject to the easement*.

(Emphasis added.) Van Denburgh contends that the letter, particularly the emphasized text, differentiates the Ski Lift Easement area from the Path and the Path from the Public License area. He interprets this language as an admission by Sweeney that the Ski Lift Easement area is not subject to the Public License and

that "Van Denburgh did not have and never [did have] permission to use the [Path area]."

¶9      As discussed, the Ski Lift Easement is not a public easement, is not properly subdivided in the manner Van Denburgh describes, and has nothing to do with whether Van Denburgh's use of the Path was permissive or adverse. Accordingly, the trial court properly disregarded the letter as evidence that the Ski Lift Easement was exempt from the Public License, the relevance of which is explained *supra* ¶ 7.

¶10      Similarly, the letter does not indicate that Van Denburgh never had permission to access the Path as a member of the public under the Public License.[3] Rather, the letter correctly states that he has no "legal right" to use the Path. Instead, his use is permissive and subject to revocation at any time. Van Denburgh received the letter shortly after a Sweeney representative discovered his trespasses. The letter describes those trespasses and then explains that Sweeney would nonetheless continue to permit Van Denburgh to access its property via the Path, and even keep his gate and sprinkler system in place, if Van Denburgh signed an agreement acknowledging that his ongoing use is permissive and revocable and indemnifying Sweeney, the ski resort, and other relevant parties. Van Denburgh would not be permitted to continue using the Path without signing such an agreement. As explained by Dr. Sweeney in his deposition, "Mr. Van Denburgh has other options" by which he can access skiing, such as "walking down the street, walking up another way or driving down [to] the resort." This

---

3. Interestingly, in his written response to the letter, Van Denburgh was essentially apologetic, explaining that the Path area was weed whacked for "fire suppression and safety reasons" and the gate was erected to prevent skiers, some of whom have vandalized his property and gotten into confrontations with him, from dead-ending in his backyard. Van Denburgh did not mention his use of the Path for recreational purposes, nor did he claim any right to do so.

statement also reiterates the notion that Van Denburgh was still permitted to use the Sweeney Property and the Ski Lift Easement area but that he had no legally protectable right to do so.[4] Moreover, that permissive use did not grant Van Denburgh the right to make improvements on the Sweeney Property, particularly in light of Dr. Sweeney's concern here that the "hard improvements" Van Denburgh had already made amounted to a "violat[ion]" of the terms of the Ski Lift Easement that prohibit Sweeney from installing "any type of hard improvements in the open space." Rather than inferring limitations on the permissive use of the sixty-four acre property, the letter infers that such use could even include some improvements, so long as the member of the public acknowledged that Sweeney could revoke its permission to use its property at any time.

¶11    Last, Van Denburgh contends that "in contrast to other areas of the Sweeney Property," the Path area "served no public purpose because it merely led to Van Denburgh's backyard" and "[t]he fact that members of the public . . . occasionally [follow the Path] and end up in Van Denburgh's backyard does not support a finding that Sweeney treats the [Path] the same as the [rest] of the Sweeney Property." He also asserts that his use of the Path is distinguishable from the public's use of the rest of Sweeney's property in that he cleared the area that constitutes the Path himself, rather than using the hiking and biking paths that Sweeney built on the property for the public's enjoyment. We are not convinced that this assertion actually distinguishes Van Denburgh's recreational use of the Path from the public's recreational use of the Path or Sweeney's property as a whole. Sweeney presented evidence that the public was welcome to access every part of its property and to bushwhack new trails. In fact, Dr. Sweeney recognized that nearly "everybody" abutting the Sweeney Property has created a path "to their own

---

4. "The most widely used definition" of the word "right," "is an interest or expectation guaranteed by law." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 787 (3d ed. 2011) (internal quotation marks omitted).

homes on [Sweeney] property coming off the trails" and that Sweeney does not "care as long as people don't start putting sprinklers on and signs on and lights on [their bushwhacked paths] and cutting down trees or claiming [Sweeney's] rights no longer exist." Indeed, two of Van Denburgh's neighbors provided affidavits supporting Dr. Sweeney's testimony and relating his assurances that the public had permission to travel from their yards across Sweeney Property and to access the Creole Ski Run within the Ski Lift Easement area.

¶12    Furthermore, the affidavits of Van Denburgh's predecessors in interest indicate that they had used the Path for access to recreational activities like hiking, skiing, and dog walking, and had done little more than maintain the Path's accessibility by clearing brush, weed whacking, etc., which is explicitly permitted by Sweeney. Thus, it was Van Denburgh's installation of the gate, lights, and sprinklers that departed from the public's use, which happened too recently to establish a prescriptive easement—Van Denburgh did not own the property until 2005, and in his deposition, he stated that the gate was installed in July 2007. Further, the influx of "off track skiers and other permitted users of the Sweeney Property" that would end up in Van Denburgh's backyard, driving him to install a gate and a "No Trespassing" sign along the Path, not only demonstrates that the Path was frequently and regularly used by the recreating public but also negates Van Denburgh's claim that his and his predecessors' recreational use of the Path was somehow different from the uses permitted under the Public License.[5]

---

5. Van Denburgh also argues that without Sweeney's direct or implied permission to use the Path, which Van Denburgh and his predecessors claim to have never received, their use of the Path was necessarily adverse and under a claim of right. Van Denburgh contends that Sweeney's construction of four miles of hiking trails on its land, the signs Sweeney posted, and radio and TV interviews informing the public of its Public License were not sufficient to

(continued...)

¶13    In conclusion, Van Denburgh fails to adequately dispute the evidence supporting Sweeney's position that the Path was subject to the Public License, instead relying on unreasonable inferences he has chosen to draw from otherwise undisputed facts. The undisputed facts support the trial court's conclusion that Van Denburgh's and his predecessors' use of the Path was permissive, thereby disposing of Van Denburgh's claim to a prescriptive easement. Affirmed.

--------

5. (...continued)

directly or impliedly communicate that Sweeney's Public License extended to the public's use of the Path in particular, especially where the Path leads only to Van Denburgh's backyard. This assertion, however, is based on the assumption that members of the public would not be interested in recreating along the Path or any area of Sweeney's property that borders private land, simply because it leads only to private land. In any case, the argument fails to distinguish Van Denburgh's and his predecessors' use of the Path as adverse or inconsistent with the uses permitted under the Public License for the requisite amount of time to support Van Denburgh's prescriptive easement claim. *See Thurman v. Byram*, 626 P.2d 447, 450 (Utah 1981); *cf. Bass v. Salyer*, 923 N.E.2d 961, 967–68 (Ind. Ct. App. 2010) (determining that "[h]aving used the public easement for its intended purpose, the [plaintiffs] cannot demonstrate that their use was at the same time under a claim of right, exclusive, hostile, or adverse to the fee simple title").