ESTATE OF HOCKING: DAVISON, Administrator, Respondent, vs. HOCKING, Appellant.

*January 7—February 4, 1958.*

For the appellant there were briefs by *William E. Mc-Ewen,* and oral argument by *Mr. McEwen* and *Mr. Ralph E. Senn,* both of River Falls.

For the respondent there was a brief by *White, Davison & White* of River Falls, and oral argument by *John W. Davison.*

STEINLE, J. The principal issue involved concerns the effect of the transfers of money by the defendant to the decedent in 1954 and 1955. When determining such issue, the trial court stated:

"There were three payments of money made by the defendant to the deceased; the first on approximately December 15, 1954, in the amount of $15, the second on January 7, 1955, in the amount of $15, and a third payment of $50 on May 7, 1955, which are represented by checks. There is no dispute but what these sums were paid. The only question is whether those sums were paid on or properly applied to the indebtedness owing on the note. If they were paid on or properly applied on the indebtedness of the note, then the statute of limitations would be tolled and the plaintiff would have the right to bring the action and to recover. So the only question to be determined is whether or not these three payments were made on or were properly applied by the deceased on the note. The testimony does not, I feel, indicate that the payments were made as a gift as contended by the defendant. The obligation was owing. The deceased asked the defendant, his brother, for some money. I do not see that the purpose for which the deceased wanted to spend the money has any particular bearing on the case at all. He might spend it in any way that he saw fit. The obligation was owing. The deceased needed some money and he asked the individual who owed him some money if he would give him some money. There was nothing said particularly about the note, and since the money was paid pursuant to a request for it, I do not see how it could be considered a voluntary gift. Consequently I will have to find that it was not a gift. I think authority is very clear for the fact that if there is no specific instruction or agreement or intention as to how a payment is to be applied, in the absence of such, the creditor may apply payments made by him in such way he wishes on any indebtedness that the debtor may owe him. Since there was no talk of the note and since there was no statement that it was not to be paid or applied upon the note, and the defendant admits he made no statement to that effect, the deceased would have a right to apply the payments upon the indebtedness. Consequently, payments having been made,

the statute of limitations has tolled and the plaintiff would have a right to recover, and I will find that the payments were properly applied by the deceased upon the indebtedness represented by the note; that the obligation is still owing and that the plaintiff is entitled to judgment. . . .

"The defendant has not denied there was an obligation. The only question is, has the plaintiff a right to bring the action because of lapse of time. We have the situation of a creditor going to the debtor and saying that, 'You owe me money' and saying, 'I need some money. Can you give me some?' Now it would be a little unusual for a person to whom no obligation was owing to voluntarily go out and ask for a gift. We have the situation of a creditor and debtor; the creditor asks his debtor for money; the debtor in response to that request paid over some money. He claims that he gave it merely for the purpose of paying some expenses which the creditor had incurred for medicine or whatever it may be. The purpose for which the creditor may wish to spend the money is of no particular concern. If some payments were actually being made on a note it would make no difference how the creditor wanted to spend the money. He could spend it in any way he pleased, or could put it in a savings account. So the debtor in response to a request by the creditor for some money, paid over the money. There was no particular reference to the note, but the inference must be plain that the creditor was asking for money from his debtor. There was an obligation existing at that time. The obligation to pay existed. On the second payment in January there was no conversation between the parties whatsoever. The defendant voluntarily made a check, sent it to a man to whom he owed money. There is no dispute of the fact that he did make the payment. There was absolutely no conversation between them as to what the money was to be applied for. When there is an obligation owing the creditor has the right to apply payments as he may receive from the debtor upon the note."

It is the position of the defendant, L. R. Hocking, that there was no credible evidence to warrant a determination, (a) that he transferred the sums of money in 1954 and 1955 to his brother with an intention to recognize the note as an

existing liability and to acknowledge that he still had an obligation to pay the note, (b) that he pointed out the note at the time of the transfer of the money to his brother or that he ever made an express acknowledgment of the debt represented by the note, and (c) that the deceased brother or any one else on his behalf with his authority, actually applied the transfers of money on the note. It is also the contention of the defendant that the trial court erred in refusing to hear evidence as to his purpose in making the transfers of money, and further that it was error to have refused to admit into evidence a statement constituting an admission against interest by a party of interest in the proceedings.

At the trial the plaintiff rested his cause after examining the defendant adversely, and after offering in evidence as exhibits the note in question and the three checks showing transfers of money by the defendant in 1954 and 1955. The exhibits were admitted into evidence. On the reverse side of the note appear memoranda in handwriting as follows:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| " | Pd Int. |  | Apr. | '25— | $125 |
| "1954 | " | " | Dec. | 15— | 15.00 |
| "1955 | " | " | Jan. | 28— | ~~28.00~~ |
|  |  |  |  |  | 15.00 |
| "1955 | " | " | May | 9— | 50.00" |

The two checks for $15 each were payable to the order of "C. R. Hocking." The $50 check was dated May 7, 1955, and was payable to the order of "Mr. & Mrs. C. R. Hocking."

The defendant testified on his own behalf. Nettie Camp, a daughter of the decedent by a prior marriage was called as a witness by the defendant. After testifying that she had a conversation with the wife of decedent shortly before his death concerning the $50 check of May 7, 1955, she was not permitted by the court (upon objection by the plaintiff) to testify as to what the decedent's wife had said concerning the purpose of the money so transferred by check.

The defendant admitted the execution of the note and also the delivery of the checks in 1954 and 1955. The memoranda on the reverse side of the note was not identified by anyone in the evidence. The defendant denied ever making any payment on the note. During the examination of the defendant, the transfers of money were referred to as payments (plaintiff's counsel first using such expression) by the defendant, and were also spoken of by him as gifts. Specifically in so far as material, the defendant testified (abridged) :

"I did not pay $125 interest on this note in April, 1925. I never paid one penny on the interest. I gave Charles R. Hocking $15 about December 15, 1954, by check. Charles R. Hocking came to me and asked me for a little money; that he needed some money for medicine and I gave my brother that $15 check. He just asked me if he could have a little money. I said 'Yes, you can have some money' and I gave him that $15 check. That is all there was to it. I didn't say a word about the note or anything else. He took this check and left. I didn't tell him it was a Christmas present or any other kind of gift. All I did was hand him a check for $15. About a month later I gave him another check for $15. It was about January 7, 1955. I sent the check to him through the mail. He was sick and I was busy and I put it in an envelope without any notation with it and sent it to him through the mail. The money out of that check was for medicine because they had to buy so much medicine; he knew what the check was for, he knew it was coming. I told him I would give him one each month. I made a third payment to Charles R. Hocking by check. I signed the check for $50 dated May 7, 1955, payable to Mr. & Mrs. Charles Hocking, and handed it to Mrs. Hocking. My brother, Charles R. Hocking, was extremely ill and wasn't able to sign it. I handed this check for $50 to Mrs. Charles R. Hocking at her home. I didn't say anything that day that I gave it to her. I said that it was for shots for his condition and he took one shot and was dead the next morning. I made no other payments to my brother besides these three. I didn't give Charles R. Hocking any Christmas present after giving him the first check about December 15, 1954. I

don't know his birthday. I did not give him a birthday gift or any gift in December of 1953."

In the adverse examination the defendant was asked, "Now, Mr. Hocking, do you deny that you have any money to pay this note with?" Over objection by the defendant that the matter was irrelevant, the court directed the defendant to make answer. His response was "I did not have any money to pay this note and I do not have it now."

The defendant's testimony in direct examination was not contrary to that elicited in the adverse examination.

It is well established in this state that in order to renew a debt once barred, there must be an express acknowledgment of the debt with the intention to renew it as a legal obligation. A partial payment, to operate as a new promise and avoid the bar of the statute of limitations, must be made under such circumstances as to warrant a clear inference that the debtor recognized the debt as an existing liability, and indicated his willingness, or at least an obligation, to pay the balance. See *Estate of Shea* (1929), 198 Wis. 613, 225 N. W. 326, and *Stewart v. Industrial Comm.* (1940), 236 Wis. 167, 294 N. W. 515. Such rule is in accordance with the decided weight of authority in the United States.

At 34 Am. Jur., Limitation of Actions, p. 265, sec. 338, it is pointed out:

"The principle on which part payment takes a case out of the statute of limitations is that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, the running of the statute will not be stopped by reason of such payment. Therefore, a part payment, to have the effect of tolling the statute of limitations, must be made and accepted as payment of part of the particular indebtedness in question, under circumstances such as warrant a clear inference that the debtor recognizes the whole of the debt as an existing liability, and indicate his willingness, or at least his obligation, to pay the balance. The payment must be distinct, unequivocal, and

without qualification, and the debt or obligation must be definitely pointed out by the debtor, and an intention to discharge it in part made manifest."

At 54 C. J. S., Limitations of Actions, pp. 425 to 428, sec. 322, it is stated:

"A part payment, in order to be effectual to toll or interrupt the statute must be clear, direct, and absolute, intended as such a payment, and cannot rest on mere surmise or conjecture. It must be voluntary on account of the debt or legal obligation in the suit, and free from any uncertainty as to the identification of the debt on which it is made, . . . it must also be made as part payment of a larger debt, for which the action is brought, and be so accepted by the creditor, and be made under such circumstances as recognize the whole of the debt as subsisting, and as are consistent with an intent to pay the balance."

In *Anderson v. Nystrom* (1908), 103 Minn. 168, 170, 114 N. W. 742, 743, 13 L. R. A. (N. S.) 1141, cited with approval in *Estate of Mayer* (1948), 253 Wis. 32, 33 N. W. (2d) 213, it was said:

"In order to infer a new promise from part payment of an obligation already barred by the statute of limitations, the debt must be definitely and specifically pointed out, and an intention to discharge it in part made manifest."

In *Ferris v. Curtis* (1912), 53 Colo. 340, 345, 127 Pac. 236, 238, Anno. 25 A. L. R. 59, the court declared:

". . . the efficiency of the payment to avert the effect of the statute of limitations as a bar, rests in the conscious and voluntary act of the defendant, explainable only as a recognition and confession of the existing liability."

As is manifest, the record is entirely devoid of any evidence that the note was mentioned by either of the brothers or by any other person at or about the time of the transfers of money in 1954 and 1955. There is no evidence indicating

that the deceased wrote the memoranda on the reverse side of the note, or that he authorized anyone to do so for him. The evidence relating to the memoranda was admitted by the court over the objection of the defendant. The testimony of the defendant does not show that he had an intention of recognizing the note as an existing liability. The checks contain no indication that they were intended as payments on the note. At most the evidence demonstrates that the deceased asked the defendant for money with which to purchase needed medicine, and that the defendant indicated that he would provide him with funds periodically for such purpose.

The burden of proof was upon the plaintiff to establish an express acknowledgment of the debt with intention to renew it as a legal obligation. *Estate of Shea, supra.* The mere transfer in 1954 and 1955 of the amounts totaling $80 by the defendant for use by the decedent, and the memoranda on the reverse side of the note appended by an unidentified person, when considered in connection with the other circumstances appearing of record, are not sufficient to establish a clear inference that the defendant recognized the note as an existing liability or that he indicated a willingness on his part to pay the balance.

In determining that the three checks delivered by the defendant to the decedent were payments and not gifts, the court apparently relied upon the principle that a transfer of money or property by a debtor to one to whom he was indebted, will be presumed to have been intended as a discharge or satisfaction of the debt, and not a gratuity. See 40 Am. Jur., Payment, p. 873, sec. 238. However, such rule is subordinate to that referred to in *Estate of Shea,* and at 34 Am. Jur., pp. 265, 266, and 54 C. J. S., pp. 425 to 428, *supra.* In arriving at its conclusion the court merely considered the decedent's request for money from the defendant, and disregarded the uncontradicted testimony that the ·

decedent wished to have it for the purpose of procuring medicine. There is no evidence to indicate that the brothers were unfriendly after the payment of the note became barred by the statute of limitation, or that the decedent and the defendant ever referred to said note in any conversation that they had between them. Since the rule upon which the trial court apparently relied, viz., that the transfer of money is presumed to be in discharge or satisfaction of a debt, does not apply, and since the plaintiff failed to present any evidence to establish that the debt was pointed out by the debtor at or about the time of the delivery of the checks, or that it was his intention to discharge it in part and ultimately pay the balance, it was but arbitrary to hold that the defendant's action in delivering the checks was explainable only as a recognition and confession of the existing liability. It is elementary that in matters outside of the field of general knowledge and in cases where the testimony of experts or those particularly familiar with matters at issue is necessary, the findings of all triers of fact, either court or jury, must be based upon testimony of witnesses or other evidence made a part of the record. See *Tullgren v. Karger* (1921), 173 Wis. 288, 294, 181 N. W. 232.

Sec. 330.42, Stats., provides:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the cause out of the operation of this chapter [Limitations], unless the same be contained in some writing signed by the party to be charged thereby."

Sec. 330.46, Stats., provides:

"Nothing contained in sections 330.42 to 330.45 shall alter, take away, or lessen the effect of a payment of any principal or interest made by any person, but no indorsement or memorandum of any such payment, written or made upon any promissory note, bill of exchange, or other writing, by or on behalf of the party to whom such payment shall be made or

purport to be made, shall be deemed sufficient proof of the payment so as to take the case out of the operation of the provisions of this chapter."

In contending that the memoranda on the reverse side of the note was admissible in evidence, the plaintiff relies upon principles enunciated in *Estate of Patterson* (1930), 201 Wis. 362, 230 N. W. 137. There the court was called upon to determine whether an indorsement upon a note (given by decedent payor to the payee) after the statute of limitations had run, was admissible in evidence. The representative of decedent's estate maintained that the indorsement was inadmissible. However, in that case the wife of the payee testified that when payment was made, the payee in the presence of the decedent payor made the indorsement in his own handwriting. After citing sec. 330.46, Stats., this court said (p. 366) :

"The burden rests upon the claimant to establish by evidence aliunde the fact of payment."

"While under the statute the indorsement is not sufficient to prove the payment so as to raise the bar of the statute, the indorsement is however sufficient to identify the note with the transactions testified to by Mrs. Hinds and is admissible for that purpose. It is undisputed that the indorsement in question is in the handwriting of the claimant." (p. 367.)

The plaintiff maintains that the act of the defendant in delivering the three checks to the decedent were transactions comparable to those referred to by the plaintiff's wife in *Estate of Patterson, supra.* Manifestly, the plaintiff's position is not tenable. In *Estate of Patterson* the note was before the parties when payment was made, and the indorsement was affixed by the payee in the presence of the payor. Such evidence was sufficient to establish circumstances warranting a clear inference that the debtor recognized the debt as an existing liability. No such circumstances are shown in the

record in the instant case. Nor was there acknowledgment as contemplated in sec. 330.42, Stats.

We are constrained to hold that the plaintiff has failed to establish the alleged cause of action against the defendant. The complaint must be dismissed upon its merits.

In view of such determination we deem it unnecessary to decide the other assignments of error raised by the defendant upon this appeal.

*By the Court.*—Judgment and order reversed, and cause remanded with directions to dismiss the complaint upon its merits.