2007 UT App 45

**Leon J. WHITE, Plaintiff and Appellant,**

v.

**Jerry RANDALL, Defendant and Appellee.**

**No. 20050980–CA.**

Court of Appeals of Utah.

Feb. 15, 2007.

Reed L. Martineau and David Jason Hawkins, Snow Christensen & Martineau, Salt Lake City, for Appellant.

James G. Clark, Provo, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶1 Leon J. White appeals from the district court's judgment awarding White an easement for the passage of water across appellee Jerry Randall's property but denying White's request that Randall be required to reconstruct a pond on his property for White's benefit. We affirm.

## BACKGROUND

¶2 White and Randall both purchased their neighboring Sanpete County properties from a common grantor, Kaziah May Hancock. Hancock originally owned approximately thirty-seven acres. There was a pond on the upper portion of the property that was equipped with a valve such that Hancock could accumulate water in the pond and then release it to irrigate the lower portion of the property.

¶3 In 1995, White purchased a total of twenty-six acres of land from Hancock in two transactions, along with an existing well and eleven shares of irrigation company stock. White's property constituted the lower portion of Hancock's original holding, and Hancock retained the eleven-acre parcel containing the pond. At the time of the sale to White, Hancock represented to White that he could irrigate his land with water from the pond and could come onto Hancock's land for the purposes of opening and closing the pond's valve. However, no easement relating to White's use of the pond was written into Hancock's deeds to White.

¶4 In 1996, Randall purchased Hancock's remaining parcel. Randall's deed did not mention any easement for White to use the pond, but White continued to use the pond to irrigate his property with some regularity through 2002. Relations between the two

neighbors gradually soured, and Randall became convinced that White had no right to use the pond water. In 2000, Randall dug a ditch on his property so that White could access his irrigation shares [1] while bypassing the pond altogether. White refused to use the ditch and continued using the pond. Randall began turning off the valve and eventually locked it shut in May 2003. White removed the lock and continued to use the pond. Finally, in July 2003, Randall physically removed the pond from his property.

¶5 White sued Randall, alleging an easement right to use the pond and damages resulting from its destruction. White also sought to force Randall to rebuild the pond so that it functioned as before. The district court ultimately [2] ruled in Randall's favor, awarding White only an easement of access for water to cross Randall's land, but not requiring Randall to provide any sort of water storage on his property. The district court also awarded $198 in damages to Randall for chickens killed by White's dog, and ordered both parties to pay their own costs and attorney fees. White appeals issues related to the district court's easement determination.

## ISSUES AND STANDARDS OF REVIEW

¶6 White first argues that the district court erred by employing mapping software to produce maps that had not been introduced by the parties as evidence, and then relying on those maps to craft a remedy in this matter. "In deciding a case tried without the aid of a jury, the court has great leeway in deciding what are the facts as presented by the evidence before [it]. However, neither a judge nor a jury is permitted to go outside the evidence to make a finding." *Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850, 852 (1972). This issue presents a question of law that we review for correctness. *See id.* (applying a

correctness standard and affording no deference to the trial court).

¶7 Next, White argues that the district court erred when it created an easement for water access across Randall's property that did not allow White to store water on Randall's property and release it at will. " '[T]he question of whether or not an easement exists is a conclusion of law.' " *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶7, 51 P.3d 45 (alteration in original) (quoting *Potter v. Chadaz*, 1999 UT App 95, ¶7, 977 P.2d 533). However,

> "such a finding [of an easement] is 'the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts. We therefore overturn the finding of an easement only if we find that the trial judge's decision exceeded the broad discretion granted.' "

*Id.* (alteration in original) (quoting *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998) (citation omitted)).

¶8 Finally, White argues that he is entitled to an award of attorney fees as a component of punitive damages. "Whether punitive damages [should be] awarded is generally a question of fact within the sound discretion of the [fact finder], and will not be disturbed absent an abuse of discretion." *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 259 (Utah Ct.App.1997) (alterations in original) (quotations and citation omitted).

## ANALYSIS

¶9 White challenges the trial court's use of mapping software to create White's easement remedy, its refusal to mandate the reconstruction of the pond on Randall's property, and its failure to award attorney fees to White as a component of punitive damages. We affirm the judgment of the district court.

---

1. It is uncontested for purposes of this appeal that White is entitled to access his water shares by having the water flow across Randall's land. The dispute is over White's use of the pond to store water for later release.

2. This case has an unusual procedural history that involves a lost case file and, at one point, the entry of judgment in favor of White. Nevertheless, Randall successfully secured an amended judgment, and it is that amended judgment that is before us on appeal.

## I. The District Court's Use of Mapping Software

■ ¶ 10 White first maintains that the district court erred when it employed mapping software to produce maps that had not been submitted as evidence by the parties, and then used those maps in crafting White's easement remedy. On the sole occasion that it has considered the issue, the Utah Supreme Court has taken a firm stance against trial courts' use of materials outside of the evidence presented by parties at trial. *See Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850, 852 (1972). Nevertheless, under the circumstances of this case, we do not find reversible error in the district court's actions.

¶ 11 In *United Park City Mines*, the trial court was called upon to decide a dispute concerning water flow into Big Cottonwood Canyon. *See id.* at 851. United Park City Mines had constructed a water tunnel on the other side of the divide from the canyon. Salt Lake City sued, alleging that the tunnel diverted water flow that would otherwise have flowed into the canyon. At a bench trial, the city presented expert testimony that ninety percent of the tunnel water was diverted from the canyon. *See id.*

¶ 12 The trial court acknowledged the expertise of the city's witnesses in its findings of fact, but nevertheless found that the city had not met its burden of showing that the tunnel caused reduced water flow in the canyon. *See id.* at 851–52. The trial court based its decision on "a book not in evidence, by the use of which [it] made for [its] own consideration nine exhibits which were never seen by counsel at trial," and on "the use of a computer at the University of Utah, operated by a student whose skill in programming was, and is, unknown." *Id.* at 852.

¶ 13 The Utah Supreme Court recognized the trial court's discretion as a fact finder, but stated that "neither a judge nor a jury is permitted to go outside the evidence to make a finding." *Id.* The court further summarized the state of the law on this issue:

"It is elementary that in matters outside of the field of general knowledge and in cases where the testimony of experts or those particularly familiar with matters at issue is necessary, the findings of all triers of fact, either court or jury, must be based upon testimony of witnesses or other evidence made a part of the record."

*Id.* (quoting *In re Hocking's Estate*, 3 Wis.2d 79, 87 N.W.2d 811, 817 (1958)). Accordingly, the supreme court reversed the trial court, declaring that "[h]ad the court based [its] ruling upon the evidence before [it], we do not know what the judgment might have been." *Id.*

¶ 14 White characterizes the district court's actions in this case as identical to those of the trial court in *United Park City Mines*. We disagree. The instant case is distinguishable from *United Park City Mines* as to the nature of the ex parte evidence considered, the parties' knowledge of and acquiescence in the court's actions, and the lack of discernable harm to White's interests.

¶ 15 We first note that the evidence considered by the district court in this case is significantly different from that employed by the trial court in *United Park City Mines*. *See Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850, 852 (1972). In *United Park City Mines*, the ex parte evidence was indisputably "outside of the field of general knowledge," *id.* (quotations and citation omitted), was directly contrary to other evidence submitted by the complaining party, and was the basis for the court's substantive ruling on liability. *See id.* Here, it is a matter of general knowledge that water will flow downhill, and topographical maps are readily available and are not particularly specialized or difficult to read. Further, despite White's assertions on appeal, the district court's determination of a downhill slope across Randall's property toward White's is generally consistent with the evidence in this case.[3] Finally, it seems sig-

---

3. White asserts in his appellate brief that there was unrebutted trial testimony that "there was no other means to deliver water to flow across Mr. Randall's property and onto Mr. White's property." We do not view this testimony as establishing or even suggesting that Randall's property was not generally higher in elevation than White's. Indeed, such a proposition seems

nificant to us that the *United Park City Mines* trial court used the ex parte evidence to make its substantive decision, while in the present case the district court had already determined the rights of the parties and was using the mapping software as a tool to implement those rights.

¶ 16 Despite these differences, we assume that the district court's use of outside maps in this matter without the parties' knowledge, or over their objection, would violate the rule of *United Park City Mines*. However, the district court not only expressly informed the parties of its actions, but also intimated that an objection from either party would be sustained. Neither party objected, and in fact, both parties proceeded to use the district court's maps to present their hearing arguments.[4] White's failure to object to the map and his counsel's use of the map to make his arguments to the district court constitute a knowing acquiescence to the ex parte evidence that was not present in *United Park City Mines*.

¶ 17 Finally, White has demonstrated no harm arising from the district court's use of the mapping software. White presented no evidence below, nor does he suggest on appeal, that the maps produced by the district court do not accurately reflect the topography of the two properties. Neither does he assert that the parties have attempted to use the easement path ordered by the district court and have been unsuccessful. Thus, it appears that any error by the district court in using the mapping software did not cause any harm to White, or at least there is no evidence of such harm.

¶ 18 For these reasons, we find the circumstances of this case to be distinguishable from those of *Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850 (1972), and we see no reversible error below. Nevertheless, in this age of ready access to information, we caution trial courts to be mindful of the requirement that cases be decided on the evidence presented by the parties.

## II. The District Court's Easement Determination

¶ 19 White next argues that the district court erred in fashioning an easement for water access across Randall's property that did not include White's historical ability to store water on Randall's property and release it onto his own property at will. We disagree.

¶ 20 The district court found as a factual matter that Hancock, the prior owner of both White's and Randall's properties, "[n]ever owned any rights to divert or store water." White does not challenge this finding on appeal, and it stands to reason that if Hancock did not own the right to store water on her land then she could not sell such a right to White. White therefore has no such right to enforce against Randall.[5] *Cf. Tuttle v. Olds*, 2007 UT App 10, ¶ 16 (affirming dismissal of a takings claim because the defendants' actions "did not deprive Plaintiffs of anything but the illegal use of water").

¶ 21 The district court applied *Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264 (1947), to provide White with a water access easement across Randall's property, despite the absence of such an easement in either White's or Randall's deeds. White has not demonstrated that he is entitled to any more than what the district court awarded him, and we will not disturb the district court's ruling in this regard.

## III. Attorney Fees as Punitive Damages

¶ 22 Finally, White argues that he is entitled to an award of attorney fees as a form of punitive damages. We need not reach White's argument that punitive damages are an appropriate vehicle for awarding

---

untenable in light of the undisputed fact that, prior to the destruction of Randall's pond, water would flow from the pond onto White's property.

4. The district court projected its map onto the wall at the motion hearing, and both of the parties and the court referred to the map as a visual aid throughout the hearing.

5. We also note that White has failed to present any authority for the proposition that an easement for water storage can be created by implication under the circumstances presented in this case.

attorney fees because we affirm the district court's decision denying White an award of punitive damages.

¶ 23 Even when malicious action has been established, a trial court has discretion in deciding whether to award punitive damages. *See ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 259–60 (Utah Ct.App.1997). Absent an abuse of that discretion, we will not reverse a trial court's decision not to award punitive damages. *See id.* at 259. White makes no effort to demonstrate an abuse of discretion on the part of the district court, and thus, we are provided no basis upon which to disturb the district court's ruling.

¶ 24 Further, the facts found by the district court do not support the version of events that White puts forward in support of his attorney fees argument. Contrary to White's assertions on appeal, the district court ruled that White had no legal interest in the use or preservation of the pond located on Randall's property. We have affirmed that decision today. Thus, Randall's modification of his own property cannot be deemed an act of malice toward White's legitimate interests.

### CONCLUSION

¶ 25 We conclude that White acquiesced in the district court's use of the mapping software and that any error in this regard was harmless; that the district court properly concluded that White had no easement right to store water on Randall's property; and that the district court acted within the bounds of its discretion in failing to award punitive damages to White. Accordingly, we affirm the judgment of the district court.

¶ 26 I CONCUR: JAMES Z. DAVIS, Judge.

McHUGH, Judge (concurring in the result):

¶ 27 I concur with the result reached by the majority but write separately to note that my agreement is based solely on the parties'

acquiescence to the use of the mapping software by the district court. It is a basic concept of our legal system that the trier of fact must base its findings on the record evidence. *See Salt Lake City v. United Park City Mines Co.,* 28 Utah 2d 409, 503 P.2d 850, 852 (1972) ("[N]either a judge nor a jury is permitted to go outside the evidence to make a finding."). The district court, albeit with good intentions, violated that rule. In my view, the district court erred when it generated and considered evidence outside the record. Thus, even if I agreed with the distinctions noted by the majority between this case and the Utah Supreme Court's decision in *United Park City Mines Co.,* I do not believe they are relevant to our decision.[1] But for the parties' failure to object to, and their actual use of, the maps created by the trial court with the mapping software, the error here would, in my view, warrant reversal.

---

1. Because the maps created by the district court were not made available before trial, neither party had an opportunity to assess the accuracy of the information depicted or the validity of the software that created them. Interestingly, the district court noted that the software contained warnings that it should not be used to settle legal disputes.