**2015 UT App 4**

### THE UTAH COURT OF APPEALS

VALERIOS CORP., GERARDO RAMOS,
AND TOMAS VALERIO,
Plaintiffs and Appellees,

*v.*

*RAMON RAMIREZ MACIAS; TAQUERIA RAMONES, LLC;*
AND MIGUEL AGUILERA,
Defendants and *Appellants.*

Opinion
No. 20130416-CA
Filed January 2, 2015

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 110917078

David S. Head and Loren M. Lambert, Attorneys for
Appellants Ramon Ramirez Macias and
Taqueria Ramones, LLC

James L. Harris, Attorney for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
JOHN A. PEARCE and SENIOR JUDGE PAMELA T. GREENWOOD
concurred.[1]

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

ROTH, Judge:

¶1     This case arises from a claim of trademark and tradename infringement. Valerios Corp., Gerardo Ramos, and Tomas Valerio (collectively, Valerios) brought suit for trademark and tradename infringement against Ramon Ramirez Macias; Taqueria Ramones, LLC; and Miguel Aguilera (collectively, Defendants). Defendants appeal from the district court's entry of a preliminary injunction in Valerios's favor arguing the judge improperly relied on ex parte evidence in adding tradename protection after the original ruling, wrongly denied their request for a jury trial in connection with a criminal contempt proceeding, and based its award of contempt damages on insufficient evidence. We affirm in part, reverse in part, and remand for further proceedings.


## BACKGROUND

¶2     Valerios owned and operated four La Fuente restaurants in Utah. Valerios registered the tradename "La Fuente" and an associated trademark logo for "La Fuente Restaurant" with the State. In August 2011, Valerios filed a complaint against Defendants for trademark infringement, trademark dilution, unfair competition, and other related state and common law claims. Defendants operated a restaurant named "La Fuente de Salt Lake," and Valerios contended that poor service and food at Defendants' restaurant was causing damage to the reputation of its restaurant chain because of similar names and logos. Valerios also claimed that it was losing goodwill as a result of declining to accept Defendants' restaurant coupons that customers tried to redeem at Valerios's restaurants. Valerios sought damages for lost profits and also moved for a preliminary injunction to prohibit Defendants from using the "La Fuente" name and trademark during the pendency of the proceedings.

¶3    At a preliminary injunction hearing on December 8, 2011 (the December 2011 hearing), the district court concluded that the logos of the two restaurants were "all but" indistinguishable. The court also noted that Defendants' version was "a very colorable imitation" of Valerios's logo and that it would challenge "any member of the public to be able to discern a difference." As a result, the court found that Defendants had violated statutory prohibitions against "reproductions, counterfeits, copies, [and] colorable imitations" of registered trademarks. The court granted an injunction and ordered Defendants "to cease and desist of any use, display of colorable imitation of the trademark, including stylized text." The court stated, however, that it was not ready to rule on whether it would enjoin Defendants from using the name "La Fuente de Salt Lake" because the State had accepted the name for registration as a tradename and the court was unsure whether use of a registered tradename, however similar it might be to another earlier-registered tradename, could constitute infringement under Utah law. So the court declined to order Defendants to discontinue use of the name "La Fuente de Salt Lake" for the time being but admonished them to "use better judgment than you have thus far" and to change their behavior substantially in a way "that the plaintiffs, that the public, that the statute won't be violated or misled as a [result of the] counterfeit or imitation."

¶4    The district court asked Valerios to prepare the preliminary injunction order. Valerios's proposed order included a line prohibiting Defendants from "using the LA FUENTE mark and name." Defendants objected, citing the court's oral ruling allowing them to continue to use the name "La Fuente de Salt Lake." At a hearing on the objection on May 23, 2012 (the May 2012 hearing), the court posed questions to both sides about the difference between a registered trademark and a registered tradename and specifically questioned counsel about the process employed by the state in registering tradenames.

¶5    The judge stated that a few weeks prior he had been in West Valley City and had inadvertently seen a sign for what he assumed was Defendants' restaurant. He noted that it did not look like Defendants had made any effort to avoid continued infringement on Valerios's trademark. The judge also stated the use of the name "La Fuente" by Defendants had caused him concern and that he felt people who saw the sign would be confused as to whether they were at Defendants' or Valerios's restaurant. The judge asked questions about Defendants' efforts to comply with the ruling he had made at the December 2011 hearing and again initiated discussion about the process of registering tradenames with the state and whether the use of the name "La Fuente de Salt Lake" could qualify under the relevant statutes as legal infringement despite the fact that it was a name Defendants had registered. The judge then stated that "what the Court was trying not to do" in its ruling at the December 2011 hearing "was to interfere 'with a name registered by the State'" and that it was not the court's intent to tell the State it needed to void or change the registration it had given to Defendants. The court concluded, however, that the registration of a tradename by the State "doesn't give this defendant or any other person the ability to . . . infringe on existing names."

¶6    After determining that continued use of the name "La Fuente de Salt Lake" would violate the rights of Valerios, who had registered its "La Fuente" tradename before Defendants had registered theirs, the district court ordered Defendants to cease using the words "La Fuente" in association with their restaurant. The court also expressed its disappointment, based on the judge's own observations in West Valley City, that Defendants had not made any good faith effort to comply with the court's original trademark order. In response to the court's ruling at the May 2012 hearing, Valerios prepared a new order that included a provision requiring "Defendants [to] cease using the 'La Fuente' mark and name during the pendency of this matter including, but not limited to, the use of the name 'La Fuente' on signs, advertisements, and menus."

¶7     Before the year was out, Valerios filed a motion asking the court to hold Defendant Ramirez Macias in contempt of court for violating the preliminary injunction, citing continued infringement of Valerios's trademark following the December 2011 hearing and continued use of the name "La Fuente" following the May 2012 hearing. After a hearing on December 13, 2012, the court found Ramirez Macias in contempt and imposed a $1,000 fine and thirty days in jail. Valerios prepared a proposed contempt order, which included an award of $7,400 in damages, a figure it arrived at by multiplying $20 by the number of days between the date of the original December 2011 hearing and the December 13, 2012 contempt hearing. Before the order was entered, however, Defendants filed a motion asking the district court to vacate its contempt ruling because Ramirez Macias had not been provided a jury trial. The court denied the motion and entered the proposed order.

¶8     Defendants now appeal.


ISSUES AND STANDARDS OF REVIEW

¶9     Defendants first argue that the court's decision to add tradename protection to the preliminary injunction at the May 2012 hearing was in error because it was based on the court's improper consideration of ex parte evidence. "This issue presents a question of law that we review for correctness." *White v. Randall*, 2007 UT App 45, ¶ 6, 156 P.3d 849.

¶10    Defendants next argue that the court erred when it failed to grant Ramirez Macias a jury trial before finding him in contempt. "When the contempt is not committed in the immediate view and presence of the court or judge," *Gardiner v. York*, 2010 UT App 108, ¶ 35, 233 P.3d 500 (citation and internal quotation marks omitted), we review a district court's findings of fact for clear error and apply a "correction of error standard" to our review of the district court's legal determinations, *State v.*

*Long*, 844 P.2d 381, 383 (Utah Ct. App. 1992) (citation and internal quotation marks omitted). "Constitutional issues, including questions regarding due process, are questions of law that [appellate courts] review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177, *overruled on other grounds by State v. Nielsen*, 2014 UT 10, 326 P.3d 645.

¶11    Finally, Defendants contend that the court's award of damages for contempt is unsupported by the evidence. We review a district court's entry of contempt sanctions for an abuse of discretion. *Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079.

ANALYSIS

I. Ex Parte Evidence

¶12    "[T]he Utah Supreme Court has taken a firm stance against trial courts' use of materials outside of the evidence presented by parties at trial." *White*, 2007 UT App 45, ¶ 10. "In deciding a case tried without the aid of a jury, the court has great leeway in deciding what are the facts as presented by the evidence before [it]. However, neither a judge nor a jury is permitted to go outside the evidence to make a finding." *Id.* ¶ 6 (alteration in original) (citation and internal quotation marks omitted). Defendants argue that the court's decision to add tradename protection to the trademark protection it had already ordered was improperly based on "evidence that had not been presented or seen by any of the parties," to wit, the judge's inadvertent observation of Defendants' restaurant sign in West Valley City. We conclude, however, that the addition of tradename protection to the order was not based on a change in the facts before the court, but on its evolving understanding of tradename law.

¶13    At the time of the December 2011 hearing, the court was presented with evidence that both Valerios and Defendants had

been permitted to register their tradenames ("La Fuente" and "La Fuente de Salt Lake," respectively) with the State. The court seemed to be concerned about whether the State's acceptance of Defendants' tradename for registration meant that they were legally protected from any infringement claim, even though Valerios had registered its name first. But at the close of that hearing, the district court stated that it was not yet ready to decide the issue of tradename protection and that it was leaving the issue open.[2] As a consequence, the court declined to include tradename protection in its oral ruling. This was long before the judge was exposed to any ex parte evidence.

¶14     The court returned to the tradename issue at the May 2012 hearing as a result of Defendants' objection to Valerios's inclusion of tradename protection in its proposed order memorializing the December 2011 hearing. After hearing additional argument from both parties regarding the process employed by the State to register tradenames, the court reassessed its position and decided that Defendants should be prohibited from using the name "La Fuente" in any variation. This change was grounded in the court's legal determination that despite having succeeded in registering "La Fuente de Salt Lake" as a tradename, Defendants' continued use of the name could constitute infringement on Valerios's rights to its own earlier-registered name, "La Fuente," under applicable law.

---

2. The court mistakenly referred to the tradename registered by Defendants as a trademark, but from the context of the proceedings, it is clear it was referencing the registered tradename, "La Fuente de Salt Lake," that had been the primary focus of discussion throughout the hearing. At the time of the December 2011 hearing, no trademark had been registered by Defendants.

¶15   Defendants do not challenge the legal basis for the court's decision that Valerios was entitled to tradename protection, nor do they contend that the evidence properly before the court was insufficient to support its findings of fact or that those findings were inadequate to support the court's preliminary injunction order. Rather, they simply contend that the "court based its ruling upon evidence that had not been presented or seen by any of the parties." But they provide no basis in the record to support this assertion other than the fact that during the same hearing that it decided the tradename issue, the court stated it had seen Defendants' restaurant sign and expressed disapproval that the sign appeared to be in violation of the court's earlier trademark ruling. The fact that the judge expressed a strong opinion, apparently based on his West Valley City observations,[3] regarding the sign's noncompliance with his earlier unequivocal instructions to Defendants concerning their trade*mark* does not

---

3. The judge was careful to disclose what he had seen and his concern about having seen it to the parties:

> I'm sorry, if you want to ascribe error to this and—you can do what you want. But the fact is the Court unintentionally, without any manner to seek this out, happened to drive by the defendants' restaurant. And the Court's initial reaction was nothing had been done, or . . . if it had been done, it wasn't sufficient. So assume no action or there's no apparent good faith effort to comply, as the Court sees it.

And he seemed fully aware of the problems inherent with ex parte evidence as demonstrated by his statements reassuring the parties that he did not seek out the sign on his own initiative. For example, he stated, "Now, I didn't seek it out. . . . I just drove by," and "I mean, you look at your sign—and I'm sorry that I drove by, but—I mean, it was just there."

persuade us that the ex parte evidence was a material basis for the court's resolution of the trade*name* issue, a legal issue the court had expressly left open at the prior hearing and resolved on a legal basis at the May 2012 hearing.[4] We therefore conclude that the district court did not improperly rely on ex parte evidence when it added tradename protection to the preliminary injunction.

## II. Right to a Jury Trial

¶16　Next, Defendants argue that Ramirez Macias was entitled to certain protections provided to criminal defendants, principally the right to a jury trial, prior to being found in contempt for violating the preliminary injunction that had been entered. They argue that a finding of criminal contempt is so similar to a criminal conviction as to warrant the same

---

4. The preliminary injunction order the district court entered following the May 2012 hearing did contain a finding of fact that could arguably have resulted from the ex parte evidence: "Defendants have not made good faith efforts to comply with the Court's bench ruling to cease and desist any use and display, or any colorable display, of [Valerios's] trademark." This finding is consistent with the disappointment the court expressed at the May 2012 hearing with Defendants' efforts to comply with the court's previous instructions to change their sign and behavior to avoid future trademark infringement. But it is also consistent with information provided at the hearing by counsel—counsel for Defendants describing changes in the font and logo the court deemed "minor" and counsel for Valerios stating that his clients were frustrated because they had seen "no changes" to Defendants' sign or logo. There is no indication that this finding is necessary for or related to the tradename protection addition to the order.

safeguards and that the right to a jury trial in criminal proceedings is guaranteed by the Utah Constitution.[5]

¶17    Contempt can be either civil or criminal, depending on the "trial court's purpose in entering the order." *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct. App. 1991). "A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings." *Id.* Civil contempt orders, on the other hand, have remedial purposes such as "compensat[ing] an aggrieved party for injuries resulting from the failure to comply with an order" or "coerc[ing] an individual to comply with a court order given

---

5. Defendants argue that we "should also vacate the [district] court's Order Granting Contempt of Court Ruling, and remand the matter for further proceedings" because the preliminary injunction "was the basis for the foregoing finding of contempt, and if the [district] court had not altered its ruling based upon the above ex-parte evidence, there would have not been a basis to find Mr. Ramirez Macias in contempt." In other words, Defendants argue that if the court had not wrongly added tradename protection to the order, Ramirez Macias's continued use of the "La Fuente" name would not have violated the order. But having found no error in the district court's entry of the preliminary injunction, we have no reason to vacate the contempt order on that basis. And we take this opportunity to reaffirm that "[t]he proper method for contesting an adverse ruling is to appeal it, not to violate it." *State v. Clark*, 2005 UT 75, ¶ 36, 124 P.3d 235. Even if the district court had erred in adding tradename protection to the preliminary injunction, simply ignoring it would not have been either a legal option or a wise choice for Defendants.

for the benefit of another party."[6] *Id.* While the standard of proof for civil contempt is "clear and convincing evidence," the elements of criminal contempt must be proven "beyond a reasonable doubt." *Id.* at 1172. Defendants argue that because the district court found Ramirez Macias in criminal contempt, he had the right to a jury trial, which the court should have granted him sua sponte.[7] Defendants provide little analysis in support of this assertion, and our case law seems to support a contrary conclusion.

¶18　The United States Supreme Court has stated that "in the absence of legislative authorization of serious penalties for contempt, a State may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months." *Taylor v. Hayes*, 418 U.S. 488, 496 (1974). The Court concluded that while "hearing and notice" are still essential in contempt proceedings in order to provide a party the protections of due process, neither petty contempt nor petty criminal offenses warrant a "full-scale trial." *Id.* at 495–96, 500 n.9 (citation and internal quotation marks omitted). The Court has reached the same conclusion about the imposition of contempt fines, concluding that a jury trial is only necessary in contempt proceedings where the fines are "serious" and "criminal." *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 837 n.5 (1994) (determining that where the contempt fines in question totaled more than $52 million, the fines were "serious," "criminal," and "constitutionally could not be

---

6. Because the court's contempt order provided Valerios with compensation for Ramirez Macias's contemptuous acts, it has a civil aspect, but the criminal aspect of the order is what concerns us in this section of our analysis.

7. Ramirez Macias did not request a jury trial until he filed a motion sometime after the contempt hearing had occurred.

imposed absent a jury trial"); *see also id.* at 836–38. The Court reaffirmed, however, the ability of trial courts to "impose noncompensatory, petty fines for contempts . . . without conducting a jury trial." *Id.* at 839.

¶19 We adopted these standards in *Gardiner v. York*, 2010 UT App 108, 233 P.3d 500, where we considered whether a trial court erred in finding a party guilty of contempt and imposing sanctions without a jury. *Id.* ¶¶ 11, 44. We concluded, as had the Supreme Court, that trial by jury is only required to satisfy the requirements of due process in indirect criminal contempt proceedings[8] "if the sentence imposed exceeds six months of incarceration or the fines are serious and punitive." *Id.* ¶ 44 & n.16 (citing *International Union*, 512 U.S. at 837; *Taylor*, 418 U.S. at 495). We stated that "[w]hile we reaffirm the prerogative of trial courts to use the contempt power and other appropriate remedies to maintain order in matters that come before them, we caution that the exercise of that power must be consistent with constitutional due process requirements." *Id.* ¶ 19. Nevertheless, we determined that while district courts in Utah must provide a party "notice and an opportunity to be heard" prior to entering a finding of indirect criminal contempt, a jury trial is not required. *Id.* ¶ 36 & n. 16.

---

8. Contempt can be direct or indirect. *Gardiner v. York*, 2010 UT App 108, ¶ 36, 233 P.3d 500. Direct contempt occurs when the action constituting contempt occurs in the immediate presence of the court, such as speaking disrespectfully to a judge. *See State v. Williams*, 2006 UT App 420, ¶ 13, 147 P.3d 497. Indirect contempt occurs "outside the presence of the court." *Gardiner*, 2010 UT App 108, ¶ 36. Here, the actions taken by Ramirez Macias in failing to comply with the order occurred outside the immediate presence of the judge, and therefore amount to indirect contempt.

¶20 Further, the Utah Legislature has limited the available punishments for contempt to "a fine not exceeding $1,000" and a period of incarceration not longer than thirty days. Utah Code Ann. § 78B-6-310 (LexisNexis 2012). Here, the $1,000 fine imposed on Ramirez Macias by the district court did not exceed the limits set by law, *see id.*, nor did it exceed the legal bounds recognized by both the Supreme Court and this court, because it was not "serious and punitive," *see Gardiner*, 2010 UT App 108, ¶ 44 n.16; *see also International Union*, 512 U.S. at 836–38 & n.5. Similarly, the thirty-day jail sentence was within statutory bounds, *see* Utah Code Ann. § 78B-6-310, and consequently did not exceed the six-month maximum established in *Gardiner*, *see* 2010 UT App 108, ¶ 44 n.16; *see also Taylor*, 418 U.S. at 495–96. And Ramirez Macias was provided with notice and the opportunity to be heard in compliance with the requirements of due process we recognized in *Gardiner*. *See* 2010 UT App 108, ¶ 36 ("[I]ndirect contempt can only be sanctioned after notice and an opportunity to be heard."); *see also Taylor*, 418 U.S. at 496 & n.9.

¶21 Defendants argue, however, that *Gardiner*'s analysis focused on the due process protections afforded to parties in contempt proceedings under the United States Constitution, not the Utah Constitution. And they assert that Ramirez Macias had a right to a jury trial under the Utah Constitution, which they claim provides broader protection in such circumstances. In support of this argument, however, Defendants do little more than quote Article I, Section 12, of the Utah Constitution, which states in pertinent part: "In *criminal prosecutions* the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed . . . ." Utah Const. art. I, § 12 (emphasis added). But the Sixth Amendment to the United States Constitution is very similar, providing: "In all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI

(emphasis added). And Defendants make no effort to demonstrate that the term "criminal prosecutions" in the Utah Constitution is so different in scope from the "criminal prosecutions" referenced in the Federal Constitution as to suggest a different standard. *See* U.S. Const. amend. VI (establishing the rights afforded to the accused in "criminal prosecutions"); Utah Const. art. I, § 12 (same). Nor do they explain how the right in Utah to "a speedy public trial by an impartial jury" is a more expansive right than the "speedy and public trial, by an impartial jury" promised in the Federal Constitution. Thus, beyond simply equating the term "criminal prosecution" used in Article I, Section 12 with a criminal contempt proceeding because both are "criminal," Defendants make little attempt to analyze whether the concept of "criminal prosecution" extends any further under the Utah Constitution in the context of contempt proceedings than it does under the Federal Constitution. *See Midvale City Corp. v. Haltom*, 2003 UT 26, ¶¶ 73–75, 73 P.3d 334 (explaining that while "the state constitution can provide protections that differ from those available under the Federal Constitution, the failure to define the nature of those protections is fatal" to an appellant's claim and that "[w]ithout analysis, the court can make no informed decision regarding whether the state constitutional provision in question was intended to mirror its federal counterpart, or whether it was intended to expand the scope" of the constitutional right at issue). As a consequence, Defendants have failed to persuade us that *Gardiner* does not apply here.

¶22 Accordingly, we conclude that Ramirez Macias was not entitled to trial by jury on the criminal contempt charge.[9]

---

9. Defendants also argue that, because the contempt proceeding was criminal, Ramirez Macias was entitled to "all of the protections" and "other rights" afforded to criminal defendants. But with one exception aside from the right to a jury trial already

(continued...)

### III. Award of Damages

¶23 Finally, Defendants argue that the court erred in awarding Valerios $7,400 in damages.

¶24 Valerios estimated the injury resulting from Defendants' violations of the court's order at $20 per day multiplied by the number of days between the December 2011 hearing and the final contempt hearing on December 13, 2012, and the district court awarded this amount to Valerios in its contempt order. But "the amount of fees and costs awarded under the Contempt Statute cannot exceed the amount of 'actual loss or injury' suffered by the other party." *Goggin v. Goggin*, 2013 UT 16, ¶ 36, 299 P.3d 1074 (quoting Utah Code Ann. § 78B-6-311 (LexisNexis 2012)). While Valerios contends that its $20-per-day damages estimate is "very" conservative, evidence in contempt proceedings, as elsewhere, must "rise[] above speculation and provide[] a reasonable, even though not necessarily precise, estimate of damages." *TruGreen Cos. v. Mower Bros., Inc.*, 2008 UT 81, ¶ 15, 199 P.3d 929 (citation and internal quotation marks omitted). We agree with Defendants that Valerios's bare $20-a-day conclusion, unsupported by any testimony or any other

---

discussed, Defendants never identify what "other rights" they are referring to or what rights criminal defendants receive that Ramirez Macias was denied. The only right Ramirez Macias names specifically is the right against self-incrimination. Even if we assumed that Ramirez Macias was entitled to such a right (an issue we do not reach here), Defendants do not establish that any right against self-incrimination that Ramirez Macias may have had was violated. No transcript of the contempt hearing was provided on appeal, and Defendants have pointed to nothing in the record suggesting that Ramirez Macias was compelled to testify at the contempt hearing against his will. We therefore reject this claim as well.

evidence, is too speculative and arbitrary to meet this standard, and the $7,400 award based solely on that estimate therefore exceeds the court's discretion. Accordingly, we vacate the $7,400 judgment and remand this case to the district court to determine the actual damages incurred by Valerios.

## CONCLUSION

¶25    We conclude that the district court did not err when it revisited its ruling concerning Defendants' use of the tradename "La Fuente." We also conclude that Ramirez Macias was not entitled to a jury trial on the issue of criminal contempt. Finally, we determine that the damages entered by the district court were speculative. We therefore affirm the tradename ruling and contempt finding but vacate the $7,400 judgment and remand for further proceedings.

———————