COURT OF APPEALS
DECISION
DATED AND FILED

October 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP1378**

STATE OF WISCONSIN

Cir. Ct. No.  **2024SC34**

IN COURT OF APPEALS
DISTRICT IV

CAVALRY SPV I, LLC,

    PLAINTIFF-RESPONDENT,

  V.

RODNEY F. MENKE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marquette County: CHAD A. HENDEE, Judge. *Affirmed*.

¶1     BLANCHARD, J.[1] Cavalry SPV I, LLC, ("Cavalry") sued Rodney F. Menke in small claims court seeking payment of a credit card debt. Menke did not dispute the existence or amount of the debt. Instead, he argued that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

the six-year statute of limitations had run before Cavalry commenced the action. Cavalry responded with evidence that Menke had made payments on the debt, and argued that the statute of limitations began running anew when the last payment was made. Menke did not dispute that, if he made the payments as claimed by Cavalry, this fact would defeat his statute of limitations defense. But Menke sought to prove that he did not make these payments. The circuit court granted judgment for Cavalry. I affirm because Menke fails to show that the circuit court's implied relevant findings of fact were clearly erroneous.

## BACKGROUND

¶2 In 2023 Cavalry purchased a pool of accounts from Citibank that had outstanding balances due. Menke's credit card account was among those purchased by Cavalry.

¶3 Cavalry filed the summons and complaint in this case on February 28, 2024, claiming that Menke owed Cavalry the outstanding balance then due.

¶4 At trial in the circuit court, Menke informed the court that his defense was that the suit was filed "outside the statute of limitations." Menke does not suggest on appeal that he offered any other defense to the court.

¶5 Cavalry called a single witness, whose testimony served solely to authenticate several exhibits that Cavalry introduced. One exhibit was a set of credit card statements, which reflected monthly payments to the Citibank account associated with Menke's credit card over a five-month period (one each month), with the final payment received by Citibank in August 2018. Each of the payments was annotated as having been made by telephone. Each of the payments

was for the minimum amount that was then due and was made on the sixth day of the month.

¶6     Menke, who represented himself, was sworn in. He submitted to the circuit court documents from a business he owned in 2013, which reflected a payment to the Citibank account in April 2013. Menke testified that his business closed in 2015, and that as a result any payments that he could have made in 2018 must have come from one of his personal accounts. He also testified that he had contacted the successor to the bank he used in 2018, and that the records of that bank showed no payments that would correspond to the 2018 payments reflected in Cavalry's exhibit.

¶7     The circuit court asked Menke whether the address appearing on the 2018 statements was his address at that time, and he responded yes. Menke also testified that he believed, as of 2018, that he had settled all debts that he had incurred to that time, and therefore he likely would have assumed that any mailed statements that he received from purported creditors were junk mail and discarded them without examining the contents.

¶8     The circuit court concluded that Cavalry carried its burden to show that Menke owed the debt that Cavalry purchased from Citibank. The court said that it was "satisfied that [Cavalry] acted within the necessary statute of limitations," and accordingly awarded Cavalry a judgment for the sum owed. Menke appeals.

**DISCUSSION**

¶9     As an initial matter, I see no other way to interpret the circuit court's comments in ruling at the end of trial other than that it made an implied finding

3

that Menke was responsible for the 2018 payments highlighted by Cavalry. Menke does not develop an argument to the contrary.

¶10 With that understanding, the parties on appeal appear to agree on the relevant law. Menke renews his argument that Cavalry sued him outside the statute of limitations. Menke directs this court to WIS. STAT. § 893.43(1), which requires that any "action upon any contract" "be commenced within 6 years after the cause of action accrues or be barred." As Cavalry notes, and Menke does not dispute, Wisconsin applies a common-law rule that this six-year period can be extended by partial payments made before the original six-year period has run, and that the period resumes running when the last partial payment is made. *See Engmann v. Estate of Immel*, 59 Wis. 249, 18 N.W. 182 (1884). To have this tolling effect, a partial payment must be made "under such circumstances as to warrant a clear inference that the debtor recognized the debt as an existing liability, and indicated … willingness, or at least an obligation, to pay the balance." *Davison v. Hocking*, 3 Wis. 2d 79, 86, 87 N.W.2d 811 (1958). This tolling rule "extends the statute of limitations to encourage settlement agreements without litigation." *Liberty Credit Servs., Inc. v. Quinn*, 2004 WI App 202, ¶6, 276 Wis. 2d 826, 688 N.W.2d 768.

¶11 Based on this shared understanding of the legal standard, the parties appear to concur that, if Menke made the 2018 payments, the six-year limitations period commenced running at the time the last payment was made, and that therefore the statute had not run when Cavalry filed suit in 2024. Their dispute centers on whether Cavalry's evidence that Menke made the 2018 payments was sufficient to support the circuit court's implied finding that he did make them.

¶12  Menke asserts on appeal that "no payments were made by or drawn from his financial institutions" during the relevant time in 2018, and notes that Cavalry's documentation does not show the source of the 2018 payments on the Citibank account. Cavalry responds by noting that the burden of proof in this civil case was the relatively low standard of the preponderance of the evidence, and Cavalry suggests that it is unlikely that some unknown third party made the 2018 payments without being directed to do so by Menke. Menke does not dispute that the circuit court was required to apply the preponderance burden of proof standard to the dispositive factual issue here. *See State v. Rodriguez*, 2007 WI App 252, ¶18, 306 Wis. 2d 129, 743 N.W.2d 460 ("[P]reponderance of the evidence" means "more likely than not." (citation omitted)).

¶13  I affirm because Menke fails to provide a basis to disturb the circuit court's determinations in its role as factfinder. Following a court trial, an appellate court must accept the circuit court's findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). Further "it is the burden of the appellant to demonstrate that the trial court erred." *See Seltrecht v. Bremer*, 214 Wis. 2d 110, 125, 571 N.W.2d 686 (Ct. App. 1997). Given the evidentiary picture before the circuit court—in particular, the documentation showing payments made on Menke's debt in 2018—there was a reasonable inference to be drawn that it was Menke who made those payments.

¶14  It is true that Menke presented evidence at trial that he did not make the 2018 payments. This consisted of his own testimony and records showing that the 2018 payments had not come from one particular account that Menke identified as one of his accounts. Menke also suggested one way that the payments theoretically could have been made without his knowledge—through some sort of automatic payment plan—which, if that were indeed what happened,

could call into question whether the payments indicated Menke's recognition of the debt and an obligation to pay, and thus whether they should toll the statute of limitations. *See Davison*, 3 Wis. 2d at 86 (circumstances of partial payment must "warrant a clear inference" that the debtor recognized the debt). As part of this argument, Menke noted the somewhat mechanical way that the payments occurred—with each payment being made for the minimum amount due and on the same day of the month for five consecutive months. And again, Menke notes that Cavalry's exhibits do not show the source of the 2018 payments.

¶15    But the circuit court, as factfinder, was obligated to determine, based on all of the reliable evidence, which of two plausible inferences to draw—that Menke made the 2018 payments or that he did not. And I conclude that the court's implicit finding that Menke made the 2018 payments was not clearly erroneous, because there was evidentiary support in the form of the payments themselves, as well as proof that the statements were mailed to Menke's then-current address, which would have alerted him to the account activity. Further, this finding was not conclusively disproved by Menke's submissions and testimony.

¶16    Specifically regarding Menke's automatic-payment concept, his evidence was thin at best. The timing and nature of the 2018 payments would be entirely consistent with the mechanical way in which many debtors routinely and intentionally pay off many debts.

¶17    In addition, if Menke made the 2018 payments, then the circuit court had a reasonable basis to conclude that he did so "under such circumstances as to warrant a clear inference that [he] recognized the debt as an existing liability, and

indicated his willingness, or at least an obligation, to pay the balance." *See Davison*, 3 Wis. 2d at 86.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.